**ANDRE DUCROT and DANILLE DUCROT dba LE STRAND CAFE, et al., [IN RE: AMPAC CASES], Plaintiffs**

**v.**

**MARSHALL & STERLING, INC., Defendant/Third Party Plaintiff**

**v.**

**LAWRENCE M. NEADLE, JR. et al., Third Party Defendants**

District Court Civil No. 1991/257
1991/310

District Court of the Virgin Islands

Div. of St. Croix

August 16, 1994

BROTMAN, *District Judge*

## MEMORANDUM AND ORDER

The following motions are before the court at this time: (1) Defendant BancFlorida's and Defendant Gillette, Pilon & Richman, P.A.'s ("Gillette, Pilon") motion to cap damages at $700,000; (2) Defendant J.H. Minet Company of Puerto Rico, Inc.'s ("J.H. Minet") partial summary judgment motion as to claims brought against it in the individual actions; (3) Third-Party Plaintiff Marshall & Sterling, Inc.'s ("Marshall & Sterling") and the Government of the Virgin Islands' ("Government") motion to strike BancFlorida's affidavits; and (4) the Government's motion to strike BancFlorida's post-hearing memorandum. On Friday, May 13, 1994, the court heard argument on all the motions except for the motion to strike the post-hearing memorandum.

## I. BACKGROUND

The facts of this case are familiar and will only be summarized here. In the fall of 1987, American Property & Casualty Insurance ("AMPAC"), through its president Lawrence M. Neadle, sought a Certificate of Authority from the Virgin Islands' government to write insurance policies. Under Virgin Islands' law, AMPAC was required to have $700,000 in unencumbered assets. In or about October 1987, Naples Federal Savings and Loan Association, now

known as BancFlorida, made two loans in the aggregate amount of $700,000 to a Florida corporation, Dichem Corporation ("Dichem"). Dichem, in turn, loaned the funds to AMPAC which utilized the money to purchase CDs from BancFlorida. The CDs were pledged as collateral for the Dichem loans. The bank subsequently agreed to release its collateral hold on AMPAC's CDs when it accepted substitute collateral from Dichem. On January 5, 1988 BancFlorida's vice-president Robert Collins advised the V.I. Division of Banking and Insurance that AMPAC's CDs were unencumbered. On January 8, 1988 AMPAC was granted a license to sell insurance in the Virgin Islands.

Hurricane Hugo struck the islands in September 1989 causing millions of dollars in property damage. AMPAC thereafter became insolvent as a result of claims made against its policies. AMPAC allegedly misrepresented the status of its CDs and wrote policies without maintaining sufficient capital funds or reinsurance.

## II. DISCUSSION

### A. *Motion to Cap Damages*

BancFlorida and the individual bank defendants,[1] together with Gillette, Pilon, argue that damages should be limited to $700,000, according to the "benefit of the bargain" rule. They argue that the Government of the Virgin Islands would have been entitled to only $700,000 even assuming that the CDs were on deposit without any liens or encumbrances. They also argue that the defendants did not proximately cause the millions of dollars in losses alleged in this case. They rely on a Second Circuit opinion from 1946 in support of their argument that the chain of causation between the alleged fraud and the Hurricane Hugo claimants is too tenuous. Standard Surety & Casualty Co. of N.Y. v. Plantsville Nat. Bank, 158 F.2d 422 (2d Cir. 1946), cert. denied, 331 U.S. 812 (1947).[2]

In response, Marshall & Sterling and the Government contend that Virgin Islands' law follows Section 549 of the Restatement (Second) of Torts which allows a plaintiff to recover all damages

---

[1] The individual defendants are J. Michael Holmes, Andre Delmont, and Donald Zumfeld.

[2] They also argue that the Third Circuit adopted the "benefit of the bargain" rule in B.F. Hirsch v. Enright Refining Co. Inc., 751 F.2d 628 (3d Cir. 1984). B.F. Hirsch was decided under New Jersey law, however.

legally caused by fraudulent misrepresentation. They also assert that liability on the part of the bank defendants and other defendants is for jury determination.

■ Upon review, the bank defendants and the law firm's reliance on the "benefit of the bargain" rule is misplaced. In this diversity case, the appropriate law is the law of the Virgin Islands. Absent local law to the contrary, this court must follow the restatements of law. V.I. Code Ann. tit. 1, § 4 (Equity 1967 & Butterworth Supp. 1993). In this case, Section 549 of Torts 2d applies, as argued by the plaintiffs.[3] The correct measure of damages is either "out-of-pocket" damages or the "benefit of the bargain" rule depending upon which measure more adequately compensates the injured party. See Restatement (Second) Torts, § 549, cmt. g (1976) ("in occasional cases the out-of-pocket rule will actually be more profitable and satisfactory from the point of view of the plaintiff than the benefit-of-the-bargain rule"). According to Section 549, and case law interpreting it, the goal of awarding damages for fraudulent misrepresentation appears to be to restore the injured party to the position it would have been in had the fraud not been committed. See generally W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 110, at 768 (5th ed. 1984) (discussing the two measures and noting that courts are divided over which is correct). The restatement applies a flexible approach according to which the measure of damages is dictated by the facts of each case. The "out-of-pocket" rule should be applied when the plaintiff has not entered into any direct transaction with the defendant, but has suffered a loss based upon a representation made by a third party. See Restatement (Second) Torts, § 549, cmt. h (1976).

─────

[3] Section 549 entitled "Measure of Damages for Fraudulent Misrepresentation" provides as follows:
    (1) The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker, the pecuniary loss to him of which the misrepresentation is the legal cause, including
        (a) The difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
        (b) Pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation.
    (2) The recipient of a fraudulent misrepresentation in a business transaction is also entitled to recover additional damages sufficient to give him the benefit of his contract with the maker, if these damages are proved with reasonable certainty.

■ Regardless of which measure of damages is applied, plaintiffs are entitled to recover consequential or special damages which can be established with reasonable certainty. The issue of whether plaintiffs' damages were proximately caused by defendants' fraudulent conduct must be decided by a jury. Defendants have not cited any controlling case law to support their argument that the chain of causation is too tenuous. The particular facts of this case, in which it is alleged that Larry Neadle and the bank defendants engaged in a series of transactions to defraud the Virgin Islands government into issuing a license to AMPAC, are clearly in dispute. This case is certainly distinguishable from the cases relied on here by defendants. Thus, the applicable law does not require this court to find that defendants are not liable for any damages or that damages must be limited to $700,000. Accordingly, the motion for partial summary judgment will be denied.

## B. *J.H. Minet's Motion*

Defendant J.H. Minet moves for summary judgment as to claims brought against it by individual insureds who procured AMPAC policies through Marshall & Sterling.[4] In sum, these insureds have each made a claim that J.H. Minet negligently failed to truthfully and accurately disclose the reinsurance coverage procured by AMPAC. J.H. Minet argues that individual insureds have no cause of action against a reinsurance broker, such as J.H. Minet. It contends that a reinsurance broker who procures reinsurance for an insurer owes a duty to the insurer, i.e. AMPAC, but not the insured because there is no contractual or otherwise legally cognizable relationship between the insured and J.H. Minet.

In their response, plaintiffs assert that they have a cause of action against J.H. Minet under Virgin Islands' law on the grounds that J.H. Minet negligently represented to AMPAC that it had adequate reinsurance and knew or should have known that the insureds would rely on that representation. The individual insureds contend

---

[4] J.H. Minet filed its motion in the following cases which have been consolidated for discovery: Caribbean Health and Racquet Club v. M & S, Civ. No. 1991-259; Janeska. Inc. v. M & S, Civ. No. 1993-12; K.R.W., Inc. v. M & S, Civ. No. 1990-202; People's Drug Store v. M & S, Civ. No. 1990-273; Queen's Quarter Associates, Ltd. v. M & S, Civ. No. 1993-13; Antilles Automotive Corp v. M & S, Civ. No. 1991-252; Simmonds v. M & S, Civ. No. 1991-48; and Le Strand Cafe, Inc. v. M & S, Civ. No. 1991-257.

that J.H. Minet made representations regarding reinsurance to Larry Frey, Marshall & Sterling's president, who in turn made representations to them. (See Pl.'s Resp. to J.H. Minet's Mot. for Summ. J. at 2–3.) Ducrot and the other insureds do not allege, however, that J.H. Minet made representations about AMPAC's reinsurance directly to them.

Plaintiffs argue that Section 552 of the Restatement (Second) of Torts is controlling. This section, entitled "Information Negligently Supplied for the Guidance of Others", provides for liability for anyone who in the course of his business supplies false information for the guidance of others. In summary, plaintiffs argue that J.H. Minet can be held liable to them for making representations which it should have known would affect individual insureds.

At this stage, the court has not been provided with any clear guidance whether Section 552 applies to a reinsurance broker or whether a reinsurance broker may be held liable to an insured at all. J.H. Minet argues that a reinsurer owes no duty to an insured unless the reinsurance contract contains a cut-through endorsement which creates liability on the part of the reinsurer directly to the insured. However, plaintiffs allege that J.H. Minet, as an insurance broker, negligently told Larry Frey of Marshall & Sterling that AMPAC had adequate reinsurance, and that Frey, in turn, conveyed this information to individual insureds.

■ As a matter of law, the restatement appears to contemplate a cause of action for fraudulent misrepresentation as asserted here. However, the record is not clear as to what specific representations either J.H. Minet or Marshall & Sterling made. Thus, this motion will be denied without prejudice to J.H. Minet's right to renew the motion after further discovery is conducted on these factual issues.

C. *Motions to Strike*

■ Marshall & Sterling and the Government filed motions to strike BancFlorida's affidavits submitted in support of its motion to cap damages. Movants contend that these affidavits are not based on personal knowledge as required by Rule 56(e). These motions will be denied as moot since the motion to cap damages is denied as set forth above.

■ Finally, the Government objects to BancFlorida's post-hearing memorandum filed on or about July 5, 1994. The memorandum

includes a thirty-four page brief and two additional affidavits, but was filed almost two months after the hearing on this motion. The Government objects on the grounds that the memorandum is untimely and that no request for additional briefing was made at the hearing. Rule 56(c) provides for the filing of affidavits by an adverse party up to the date of the hearing. The rule makes no provision for filing supporting affidavits after the hearing. In this case, the court did not instruct, nor did the parties even request, any additional briefing or documentation regarding the motion to cap damages. Therefore, the Government's motion to strike will be granted.

## III. CONCLUSION

For all these reasons,

It is therefore on this 16th day of August, 1994,

ORDERED that the BancFlorida's and Gillette, Pilon's motions to cap damages be and hereby are denied; and it is further,

ORDERED that J.H. Minet's partial summary judgment motion be and hereby is denied without prejudice; and it is further,

ORDERED that Marshall and Sterling's and the Government's motions to strike BancFlorida's affidavits be and hereby are denied as moot; and it is further,

ORDERED that the Government's motion to strike BancFlorida's post-hearing memorandum and affidavits is granted.