**SAASTOPANKKIEN KESKUS-OSAKE PANKKI (SKOPBANK); and GOVERNMENT GUARANTEE FUND of the REPUBLIC OF FINLAND, Plaintiffs,**

v

**ALLEN-WILLIAMS CORP.; MONICA BOYD-RICHARDS; A-W LANDVEST, INC.; CONCRETE ENGINEERING CORP.; ALBERT SHIKIAR; SUE K. MARSH; NICHOLAS GILETA; KENNETH C. WILEY; LINDA WILEY; THEODORE S. MIAZGA; ADRIENNE C. MIAZGA; JACK H-N TSENG; FAY CHIN TSENG; CHRISTIAN P. BIERNAZKI; SANDRA L. BIERNAZKI; HORACIO H. CAMPOLIETO; DINORAH CAMPOLIETO; RICHARD LANG; TANDEM, INC.; MASONRY PRODUCTS, V.I. CORP.; GRAND DEVELOPMENT, INC.; SCOTT J. DIXON; STANLEY T. CARTER, II; JAMES BOUBON; JOHN DALINGHAUS; BOBBIE LOU NAILING; GHI HOTEL MANAGEMENT, INC.; GIB GAB UNIFORMS, LTD.; HILLSIDE SYNDICATE; ADVENT INVESTMENT CORP.; DRAKE LIMITED; THE GOVERNMENT OF THE U.S. VIRGIN ISLANDS; PAUL A. MARSHALL; and MAUREEN J. MARSHALL, Defendants**

Civil No. 1995-23

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 2, 1998

220

WARREN B. COLE, ESQ., (Hunter Colianni Cole & Turner), St. Croix, U.S.V.I., *for plaintiff*

JOHN H. BENHAM, III, ESQ., (Watts Streibich & Benham), St. Thomas, U.S.V.I., *for defendant*

Hon. Stanley S. Brotman, United States District Judge (sitting by designation).

## I. Introduction

In a prior proceeding captioned *Saastopankkien Keskus-Osake-Pankki ("Skopbank") and the Government Guarantee Fund of the Republic of Finland ("GGF") v. Great Cruz Bay Dev. Co., Inc., et. al.,* Civ. No. 1991-355 (D.V.I. June 8, 1993), *aff'd*, 74 F.3d 1227 (3d Cir. Dec. 12, 1995) (hereinafter *"Skopbank I"*), this Court held that certain easements claimed by defendant A-W Landvest, Inc. ("Landvest"), as embodied in a 1990 Grant in Easement ("the 1990 Grant") and a 1990 Reciprocal Easement Agreement ("the 1990 REA") were inferior to mortgages held by Saastopankkien Keskus-Osake-Pankki ("Skopbank") and the Government Guarantee Fund of the Republic of Finland ("GGF") ("plaintiffs"). *Id.*, slip op. at 15. The Court concluded that because plaintiffs' mortgages were superior to Landvest's easement rights, such rights would be extinguished upon foreclosure. *Id.*[1]

In the within action, styled as *Saastopankkien Keskus-Osake-Pankki ("Skopbank") and the Government Guarantee Fund of the Republic of Finland ("GGF") v. Allen-Williams Corp., et al.,* Civ. No. 1995-23

---

[1] The Court also dismissed Landvest's Amended Counterclaims.

("*Skopbank II*") this Court entered a Consent Judgment of foreclosure against numerous defendants therein on February 17, 1995 in the principal amount of $2,444,847.82 and for accrued and unpaid interest owing as of December 31, 1994 in the amount of $25,263.43, together with interest thereon in the amount of $814.95 per diem from and after December 31, 1994. Consent Judgment; Pls.' Exh. B. Tandem, Inc. ("Tandem") and several other defendants were not covered by the Consent Judgment at the time it was entered. As such, a foreclosure sale of such property was never consummated.

Presently before the Court is plaintiffs' motion for summary judgment pursuant to FED. R. CIV. P. 56 for the foreclosure of the property interests of Nicholas Gileta, Theodore S. Miazga, Adrienne C. Miazga, Jack H-N Tseng, and Fay Chin Tseng ("the Gileta Defendants"); Tandem, Masonry Products, V.I. Corp. ("Masonry Products"), Drake Limited ("Drake") (collectively "the Easement defendants"); and the Government of the Virgin Islands ("the Government"). Foreclosure of the interests of all parties other than the Easement defendants have been resolved either by consent or default judgment (as noted above), Pls.' Exh. B and C, and all counterclaims in this case either have been withdrawn or dismissed, Pls.' Exh. K, L, M. Tandem is the only party opposing plaintiffs' motion.[2] In its opposition brief, Tandem also cross-moved to defer consideration on the motion, claiming a need for further discovery. The Court heard oral argument on these motions on April 11, 1997 and granted Tandem's motion for an extension of time to complete discovery. *See* Order of April 17, 1997.[3] The Court heard further argument on plaintiffs' summary judgment motion on March 17, 1998.[4] Plaintiffs' motion is the last outstanding piece

[2] Counsel for defendant notes that Tandem, in fact, is no longer the owner of the "mortgage interest" at issue in the case at bar. Such interest was assigned on December 1, 1994, recorded on May 17, 1995, and is now part of the estate of the late Pamela C. Harriman, former U.S. Ambassador to France. *See* Def.'s Exh. A. Pursuant to FED. R. CIV. P. 25(c), the action will be continued against Tandem for the sake of uniformity.

[3] Accordingly, the Court has passed upon Tandem's arguments in support of an extension of time to conduct discovery. These arguments constitute a significant portion of Tandem's Opposition Brief on the instant motion.

[4] At this most recent argument on the motion, the parties requested additional time to come to a resolution of this matter. The Court granted the parties' request, gave them 60 days to reach a settlement, and delayed its own ruling on plaintiffs' motion. Since the parties

in this foreclosure litigation. For the following reasons, the Court grants this motion for summary judgment.

## II. Factual Background

Plaintiff Skopbank is the mortgagee and creditor, by mesne assignment, of the following mortgage:

> Construction Mortgage Security Interest and Security Agreement from Allen-Williams Corp., an Ohio corporation, to R.H. Jones Abstract and Title Guaranty Company, as Trustee for Master Mortgage Fund Trust VII for $2,000,000.00 dated July 5, 1988, recorded August 11, 1988 in Book 32-Q, page 184, Document No. 1165; as modified by Mortgage Modification dated August 26, 1988, recorded August 31, 1988 in Book 32-S, page 224, Document No. 1214; as assigned to Master Mortgage Fund, Inc. by Sale and Assignment of Note and Mortgage dated December 28, 1988, recorded March 10, 1989 in Book 33-T, page 127, Document No. 457; as further modified by Mortgage Modification dated April 27, 1989, recorded March 15, 1990 in Book 35-O, page 327, Document No. 400; as increased to $2,557,444.63 and modified by Extension and Modification Agreement dated May 1, 1990, recorded June 28, 1991 in Book 37-T, page 233, Document No. 684; as assigned to Saastopankkien Keskus-Osake-Pankki (Skopbank) by Assignment of Note, Mortgage and Liens from Master Mortgage Investment Fund, Inc. dated November 23, 1992, recorded June 10, 1993 in Book 41-H, page 259, Document No. 1265. (**NOTE:** Same document also recorded November 02, 1993 in Book 41-Z, page 451, Document No. 2181.) (Plots 479-A and 479-B, Estate Chocolate Hole AND Unit 4312, Virgin Grand Villas.)

Aff. of Kathleen R. Grilley, Pls.' Exh. J. The mortgage is an encumbrance upon the following real property:

> Property A: Parcels No. 479A and 479B, Estate Chocolate Hole, No. 11 Cruz Bay Quarter, St. John, U.S. Virgin

---

have not arrived at an amicable resolution, the Court will not delay its ruling any further.

223

Islands, being 7.1783 acres, more or less, as shown on PWD No. D9-4224-T88; and

Property B: That volume of space with the portion of the structure therein contained known and designated as:

| Unit No. | Period of Use | % of Unit | % of Common Elements |
|---|---|---|---|
| 4312 | WI1R, WI2R WI3R, SP1R SP2R, SP3R SU1R, SU2R SU3R, AU1R AU2R, AU3R | 100.00 | 1.4423 |

being the Seasonal Ownership Interests and Periods of Use in the condominium Unit listed above, which condominium and Unit are located upon that portion of Parcel No. Remainder 479 Estate Chocolate Hole, No. 11 Cruz Bay Quarter, St. John, U.S. Virgin Islands being 12.2971 acres, more or less, as shown on PWD No. D9-4224-T88, and are created by the Declaration Establishing a Plan for Condominium Ownership of Virgin Grand Villas - St. John Condominium, St. John, U.S. Virgin Islands pursuant to Chapter 33, Title 28 Virgin Islands Code, and in the Floor Plan attached thereto, dated February 29, 1988, recorded March 10, 1988 in Book 31-U Page 147 No. 211 and indexed in Aux 21(h) Page 185 (hereinafter the "Declaration") as amended and supplemented by and subject to a First Supplemental Declaration Establishing a Seasonal Ownership Plan for Condominium Ownership of Virgin Grand Villas - St. John Condominium, St. John, U.S. Virgin Islands pursuant to Chapter 33, Title 28, Virgin Islands Code dated February 29, 1988 recorded March 10, 988 in Book 31-U Page 246 No. 212 and indexed in Aux 21(h) Page 285, as amended by a First Amendment to First Supplemental Declaration Establishing a Seasonal Ownership Plan for Condominium Ownership of Virgin Grand Villas - St. John Condominium, St. John, U.S. Virgin Islands dated April 12, 1988 recorded April 13, 1988 in Book 31-Z Page 289 No. 458, as further amended

by Second Supplemental Declaration dated December 6, 1988, recorded December 8, 1988 in Book 33-F, page 456, Document No. 1846; as further amended by First Amendment to Second Supplemental Declaration dated January 31, 1989, recorded February 7, 1989 in Book 33-O, page 171, Document No. 270; all at the Office of the Recorder of Deeds for St. Thomas and St. John, U.S. Virgin Islands, together with the applicable undivided percentage interest in the Common Elements as set forth above and in Exhibit A to the Declaration.[5]

*Id.* Defendant Allen-Williams Corporation ('A-W') is the fee simple title owner of the subject real property. *Id.* at P 4. The Government claims an interest therein solely by reason of a tax lien which it has asserted in the amount of $ 81,725.85 as of January 30, 1996, with continued interest accruals thereon. Aff. of Tax Debt, Exh. O; Government's Answer and Cross-Claim, Exh. D. The Government has, however, conceded that its tax lien is subordinate in time, priority and right to plaintiffs' mortgage. Order of Mar. 25, 1996, P 2, Exh. I.[6] Interests in the property claimed by the Easement defendants were all executed, delivered, and recorded after plaintiffs executed, delivered, and recorded their interest. Grilley Aff., P 7, Exh. J. Further clarification of the business relationships in this complex series of transactions is in order. In so doing, the Court refers to its opinion in *Skopbank I.*

Great Cruz Bay Development ("Great Cruz") was the owner of the Hyatt Regency St. John and the Virgin Grand Suites Condominium ("the Hotel Tract"). *Id.*, at 1. Villas Associates ('Villas') was the developer of a 96-unit condominium development known as the Virgin Grand Villas - St. John Condominium ("the Villas Tract"). *Id.* Both Great Cruz and Villas were owned and/or

---

[5] This legal description differs in certain ways from the legal description stated in plaintiffs' Complaint. *See* Pls.' Exh. A at 13-14. Counsel for plaintiffs has advised the Court that the reason for the discrepancy is that the Condominium Declaration was further amended after the execution and recording of the mortgage, and that the property description in the Complaint was that property description as it existed when the mortgage was recorded. Letter of Warren B. Cole, Esq., May 28, 1998. The Court notes that this discrepancy in no way alters the nature of the real property which is the subject of the instant motion.

[6] Defendant Allen-Williams Corp. has not contested the validity or the amount of the tax indebtedness claimed by the Government. Pls.' Br. at 6.

controlled by defendants David Allen ("Allen") and Herold Williams ("Williams"). *Id.*

Also owned and/or controlled by Allen and Williams as its two principals, Landvest was an affiliate of Great Cruz, Villas Associates, and A-W. *Id.* Landvest owned and developed a proposed 99-single-family-home development, known as the Virgin Grand Estates, and of a proposed 144-unit condominium, known as Phase III of the Virgin Grand Villas Condominium. *Id.* These properties ("the Estates Tract"), comprised a tract of approximately 71 acres of land located east of the Villas Tract. *Id.*

On September 4, 1987, Villas and Great Cruz executed a Reciprocal Easement Agreement ("the 1987 REA"), which was recorded on September 14, 1987. *Id.* at 4. In the 1987 REA, Villas granted Great Cruz a nonexclusive right of access over roadways located on the Villas Tract for the purpose of developing and providing access to other parcels of land owned or which would be acquired by Great Cruz, and over roadways across the Villas Tract for the purpose of connecting utilities. *Id.* Villas also gave Great Cruz the power to grant Great Cruz's right to traverse the Villas Tract to any other parties requiring access to Great Cruz's other real estate. *Id.*

On December 1, 1989, Landvest purchased the Estates Tract. *Id.* On June 21, 1990, Great Cruz executed the 1990 Grant in favor of Landvest. *Id.* Under the 1990 Grant, recorded on August 24, 1990, Great Cruz conveyed to Landvest a nonexclusive right of access over and across the Villas Tract and the right to construct additional roadways along and across the Villas Tract in order to reach the Estates Tract, the Hotel Tract, or any other property to which the owners of the Estates Tract would require access. *Id.*

Also on June 21, 1990, Great Cruz and Landvest executed the 1990 REA, recorded on June 29, 1990, whereby Great Cruz granted to Landvest the nonexclusive right to use the recreational facilities located on the Hotel Tract. *Id.* Under the 1990 REA, Great Cruz also transferred to Landvest the nonexclusive right of access over the roads, paths, and walkways of the Hotel Tract to get from the Estates Tract to the recreational facilities located on the Hotel Tract. *Id.* at 5-6.

The property interest claimed by the Easement defendants and disputed in this case consists of an approximately seven-acre

226

access easement across parcel 479-A of Estate Chocolate Hole. Pls.' Exh. Q. The easement once connected certain property owned by Landvest and a public roadway which runs between the Hyatt Regency St. John and a condominium development now owned by Skopbank subsidiaries. Plaintiffs contend that this easement "now serves no useful purpose because its continuation across the condominium development (Parcel 479 of Estate Chocolate Hole) has already been divested by virtue of Skopbank's foreclosure" in *Skopbank I*. Pls.' Br. at 8.

## III. Discussion

### (a) The Standard for Summary Judgment

The standard for granting summary judgment is a stringent but not insurmountable one. FED. R. CIV. P. 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

■ Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Serbin*, 96 F.3d at 69 n.2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

### (b) Skopbank's Motion for Summary Judgment

In support of their motion for summary judgment, plaintiffs first argue that, based upon this Court's determination in *Skopbank I* that its prior mortgage, when foreclosed, would extinguish all easements granted under the 1990 REA and the 1990 Grant. Pls.' Summ J. Br. at 8-9. Second, they contend that a "Loan Modification and Extension Agreement" (hereinafter "the Subordination Agreement") dated March 31, 1992[7] did not subordinate the mortgage to the claimed easement, that the alleged subordination does not meet the requirements of the Statute of Frauds, *id.* at 9, and that it was invalid because it was not witnessed by two persons and acknowledged, *id.* at 11, and that plaintiffs were bona fide purchasers for value, *id.*[8]

In its opposition to plaintiffs' motion, Tandem first relies on the doctrine of judicial estoppel, which prevents a litigant from taking a position inconsistent with a position it has successfully relied upon in a past proceeding. *Id.* at 6 (citing, *inter alia, Delgrosso v. Spang and Co.*, 903 F.2d 234, 241 (3d Cir. 1990)). Def.'s Opp. Br. at 4-7. Specifically, Tandem points out that in *Skopbank I* plaintiffs

---

[7] This document was executed on March 31, 1992 by Master Mortgage Investment Fund, Inc. ("MMIF"), Skopbank's assignor, and Sugar Bay Land Development (of which A-W was the controlling general partner).

[8] Along these lines, plaintiffs argue in their brief that because the assignment of the Mortgage was recorded without notice of or recording of the alleged subordination, their assignment takes priority. Plaintiffs subsequently conceded, however, that they were on 'at least constructive notice of the existence of this signed agreement.' Tr. of April 11, 1997 Hr'g at 5; *see also* Pls.' Supp. Summ. J. Br. at 2 (conceding "actual or constructive notice"). Accordingly, the Court need not consider plaintiffs' notice argument.

noted: "[T]he [S]ubordination Agreement] erroneously seeks to have MMIF subordinate the lien of MMIF's mortgage to the 1990 REA which does not affect the property encumbered by MMIF's mortgage rather than the 1990 Grant which does affect the property." Supp. Br. in Support of Pls.' Motion to Dismiss the Counterclaim of Defendant Masonry Prods., V.I. Corp. at 11 n.8. In that brief, plaintiffs further stated: "The Extension Agreement [the Subordination Agreement] clearly shows that the AW Defendants believe that it is necessary to obtain a written subordination agreement to preserve the 1990 REA and the 1990 Grant upon the foreclosure of a mortgage which is recorded prior to the purported easements." *Id.* at 10-11 (cited in Def.'s Opp. Br. at 5-6). Tandem, however, fails to allude to the next sentence from plaintiffs: "While the AW Defendants sought a written subordination from MMIF, they failed to obtain such an agreement from Skopbank." *Id.* at 11.

Tandem further contends, without citation to plaintiffs' brief in the earlier action, that plaintiffs noted a "draftsman's error" in the Subordination Agreement and "recognized that the intent of the parties was to subordinate the MMIF mortgage lien to the 1990 Grant of Easement Right and then presented this position to the court in support of its arguments in the earlier litigation." Def.'s Br. at 6. Nowhere in the sections of plaintiffs' prior brief, appended to Tandem's instant opposition brief, has the Court found anything regarding a "draftsman's error." Tandem finally argues that, "The Plaintiffs have previously argued that the subordination agreement at issue demonstrates the Allen-Williams Defendants' use of a written agreement to subordinate the mortgage to the easement. The Plaintiffs cannot now inconsistently argue that the subordination agreement is ineffective. The Plaintiffs' prior position precludes this argument." *Id.* at 6-7.

■ The selected pages of plaintiffs' supplemental brief in *Skopbank I*, attached to Tandem's opposition brief in the within matter, rather reveal that plaintiffs have not just recently come to the position that the Subordination Agreement is ineffective against them:

. . . As a practical matter, it defies belief that Skopbank would have subordinated the liens of the Skopbank

Mortgages to the 1990 Grant and 1990 REA and have its collateral burdened by these two onerous easements for any period of time, much less *in perpetuity*. It defies belief that Skopbank would allow the owners of the Estates Tract to have rights over Skopbank's property following a foreclosure so as to allow these neighboring owners of property in which Skopbank has no interest to have substantial rights in Skopbank's property. It is for this reason that it is nonsensical for the AW Defendants to allege that Skopbank agreed to allow 1990 REA and 1990 Grant [sic] to exist in perpetuity after a foreclosure.

Pls.' Supp. Br. at 11 (emphasis in original). The Court sees nothing inconsistent in plaintiffs' prior and current positions. Furthermore, the Court will not credit a judicial estoppel argument which relies on selected, incomplete pieces of plaintiffs' arguments taken out of context.

Tandem argues that the easement interest it claims is supported by "other bases" aside from the June 21, 1990 REA. Def.'s Opp. Br. at 3; *see also* Pls.' Summ. J. Br. at 5. Tandem further contends, relying almost exclusively on the Subordination Agreement, that the parties' intent all along was to subordinate a mortgage lien held by Master Mortgage Investment Fund ("MMIF") to the 1990 Grant and to grant access from the Estates Tract across the Villas Tract. Def.'s Opp. Br. at 7-8 (citing RESTATEMENT (Third) OF PROPERTY - SERVITUDES § 4.1 (Tent. Draft No. 4, 1994)). To resolve this dispute, the Court is guided by the Virgin Islands Legislature's mandate that:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

V.I. CODE ANN. tit. 1, § 4; *see also Monk v. Virgin Islands Water & Power Auth.*, 32 V.I. 425 (3d Cir. 1995); *Ducrot v. Marshall & Sterling*, 861 F. Supp. 363 (D.V.I. 1994).

■ It is a fundamental principle of mortgage law that: "A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law. Foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed." RESTATE-MENT (THIRD) OF PROPERTY, MORTGAGES § 7.1. The buyer at a foreclosure sale acquires the interests of previous owners of the real estate and in so doing acquires a title free and clear of all other properly joined interests that were subsequent in time - or junior - to the foreclosed lien. *Id.* cmt. a.

In a judicial foreclosure action, the foreclosing mortgagee normally makes the mortgagor and all holders of junior interests in the mortgaged real estate parties-defendant. *Id.* cmt. b. Virgin Islands statutory law is in accord on this particular point:

> Any person having a lien subsequent to the plaintiff upon the same property or any part thereof, or who has given a promissory note or other personal obligation for the payment of the debt or any part thereof, secured by the mortgage or other lien which is the subject of the action, shall be made a defendant in the action. Any person having a prior lien may be made defendant at the option of the plaintiff, or by the order of the court when deemed necessary.

V.I. CODE ANN. tit. 28, § 532.

The chronological priority rule in foreclosure proceedings is tempered by the presence of, *inter alia*, a subordination agreement. RESTATEMENT (THIRD) OF PROPERTY, MORTGAGES § 7.1 cmt. a. The Restatement further provides:

> A mortgage, by declaration of its mortgagee, may be made subordinate in priority to another interest in the mortgaged real estate, whether existing or to be created in the future, if the interest to which the mortgage is being subordinated is described with reasonable specificity in the declaration. A subordination that would materially prejudice the mortgagor or the person whose interest is advanced in priority is ineffective without the consent of the person prejudiced.

231

*Id.* § 7.7. It would be inappropriate, therefore, for a court simply to follow the order of recording if the parties' contract or other evidence shows that it contradicts the parties' intentions as to priority, or that the recording order was inadvertent, was contrary to the parties' instructions, or was regarded by them as insignificant. *Id.* cmt. a.

The clause most relevant in the instant matter provides:

9. Lender [MMIF] hereby subordinates its Construction Mortgage Security Interest and Security Agreement on the real property identified in Exhibit B hereto, to the Reciprocal Easement Agreement dated June 21, 1990, and filed of record with the Office of the Recorder of Deeds for St. Thomas and St. John, a copy of which is attached hereto as Exhibit C. Lender agrees that it will prepare and file of record not later than June 15, 1992 such documents as shall be reasonably necessary to accomplish such subordination.

Subordination Agreement, P 9 at 3. MMIF was plaintiffs' assignor. Exhibit B specifically refers to parcel 479A of Estate Chocolate Hole. *Id.* at Exh. B.[9]

In *Skopbank I,* the Court determined what rights, if any, were granted by the 1990 REA, by the 1990 Grant, and by the 1987 REA. In *Skopbank I,* the Court found that Skopbank's mortgages were executed and properly recorded before the execution and recording of the 1990 Grant and the 1990 REA. *Skopbank I,* slip op. at 8. The Court held that the 1987 REA could not serve as a basis for alleging that Landvest's easements were superior to Skopbank's mortgages. *Id.* at 9. The Court also stated: "It is undisputed that the Skopbank mortgages were executed and properly recorded prior in time to the execution and recording of the 1990 Grant and the

---

[9] Tandem makes much of the fact that no Exhibit C was attached in any of plaintiffs' submissions or made available in discovery. Def.'s Opp. Br. at 5. Based upon counsel for Skopbank's representation, no document Skopbank has found actually has this illusive Exhibit C attached. Tr. of April 11, 1997 Hr'g at 6. The Court further agrees with Skopbank's counsel that Exhibit C's absence is irrelevant, since the document at issue is "readily identifiable from the text." *Id.* Moreover, P 9 of the Subordination Agreement, in referring to Exhibit B, clearly identifies the property in dispute in this action.

1990 REA. Given these bare facts, Virgin Islands law would clearly provide for the superiority of the Skopbank mortgages." *Id.* at 8 (citing *Royal Bank of Canada v. Clarke*, 373 F. Supp. 599 (D.V.I.); *cf Krich v. Zemel*, 99 N.J.L. 191, 193, 122 A. 739 (1923)).

The Court further held in *Skopbank I* that the 1990 REA, in which Great Cruz Bay granted certain rights to Landvest, could not serve as a basis for a purported superiority over plaintiffs' mortgage. This Court previously stated, "Skopbank's mortgages are superior to Landvest's easement rights, and upon foreclosure of the A-W properties, the easements will be extinguished." *Skopbank I*, slip op. at 15 (citations omitted). Most importantly, the 1992 Subordination Agreement was also previously before the Court, and the Court still found Landvest's rights inferior to those of plaintiffs. *See* Def.'s Opp. Br. at 5.

Tandem nevertheless asserts in conclusory fashion that the earlier foreclosure action concerned property different from the property at issue here and that therefore it is not bound by that judgment. Def.'s Opp. at 7 n.2. The Court has scoured Tandem's brief in search of specific proof supporting this contention and has found none. The thrust of Tandem's brief now before the Court points to the need for further discovery. The Court granted such request some time ago. Yet in the interim, over thirteen months, Tandem has produced to the Court nothing to supplement its earlier submission. Absent specific proof, the Court cannot find that there is a genuine issue of material fact in dispute. Mere allegations, vague statements, and general denials that the property interest is different do not suffice to withstand a motion for summary judgment.

The docket in *Skopbank I* reflects that Tandem was issued a summons, filed motions in the case, and was a named party in the suit. At no point has Tandem claimed that it was not formally a defendant in that action or that it was not given proper notice of the foreclosure proceeding. Tandem relies on the very same documents relied on unsuccessfully by Landvest - a party over which Tandem has shown no greater entitlement to the subject easements.

## IV. Conclusion

■ For all of the foregoing reasons, the Court concludes that the easement interests claimed by defendant Tandem should be foreclosed.[10] Since Tandem has raised no genuine disputed factual issue, plaintiffs' motion for summary judgment will be granted.

---

[10] As such, the Court need not reach plaintiffs' other arguments in favor of summary judgment.