**HILARY HODGE, Plaintiff**

**v.**

**DAILY NEWS PUBLISHING COMPANY INC., Defendant**

Case No. ST-00-CV-726

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 17, 2009

187

188

Lᴇᴇ J. Rᴏʜɴ, Esϙ., Law Offices of Rohn & Cameron, LLC, Chiristiansted, St. Croix, USVI, *Counsel for the Plaintiff*.

KEVIN A. RAMES, ESQ., K.A. Rames, P.C., Chiristiansted, St. Croix, USVI, *Counsel for the Defendant.*

CARROLL, *Judge*

## MEMORANDUM OPINION

### (December 17, 2009)

THIS MATTER is before the Court on Defendant Daily News Publishing Company, Inc.'s Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. Plaintiff is represented by Lee J. Rohn, Esq., and Defendant is represented by Kevin A. Raines, Esq. The Court, having considered the Motion for Summary Judgment, the opposition thereto, and other papers supporting and opposing the Motion for Summary Judgment, will grant in pan and deny in part Defendant's Motion for Summary Judgment.

## BACKGROUND

Hilary Hodge ("Hodge" or the "Plaintiff") commenced his employment with the Virgin Islands Daily News (the "Daily News" or the "Defendant") as a photographer in October 1979. He received excellent reviews during his tenure with the Daily News and was awarded regular raises and occasional performance bonuses. He was generally considered to be a capable employee; and, in March 1999, he was named Chief Photographer with supervisory responsibilities over the Daily News photographers. Hodge was named employee of the month for the Daily News in April 1999.

On February 25, 2000, Hodge began an extended period of absence from work at the Daily News which continued until October 18, 2000, when he returned to work. Hodge initially advised the Daily News that he could not return to work because he was diagnosed as having uncontrolled hypertension. On March 1, 2000, Hodge submitted a short-term disability form to the Daily News, which referenced his uncontrolled hypertension. However, Hodge never made a claim for Workers' Compensation benefits for this illness.

On August 3, 2000, Hodge received permission from his physician to return to work with significant physical restrictions, and Hodge attempted to return to work with those restrictions. The Daily News advised Hodge that he could not perform the functions of his job with such restrictions,

and advised him that he could not recommence work at the Daily News until he could resume his responsibilities as Chief Photographer and supervisor of photographers. On October 12, 2000, Dr. James Nelson sent a notice to the Daily News indicating that Hodge could recommence work full time on October 16, 2000.

When Hodge attempted to return to work on October 16, he was advised that his position had been filled, and that he was being placed on leave without pay. Hodge was offered the opportunity to do freelance photography during the period that he was on leave without pay, but he refused to do so. On December 20, 2000, Hodge filed this action. On February 25, 2001, one year after he first became ill, Hodge was terminated.

Plaintiff's complaint contains five (5) counts charging wrongful termination by the Daily News. Count One charges that Hodge was terminated from his employment in violation of the Wrongful Discharge Act ("WDA") because the Daily News wrongfully refused to allow Hodge to return to his work. In Count One, Hodge also alleges that the Daily News violated the Workers' Compensation statute. Count Two alleges that, by refusing to allow Hodge to return to work, the Defendant humiliated him and that this conduct constituted the torts of negligent and intentional infliction of emotional distress. Count Three alleges that the conduct of the Daily News was wanton and outrageous, and that Hodge is therefore entitled to punitive damages. In Count Four, Plaintiff complains that the actions of the Defendant were arbitrary and capricious and in violation of the duty of good faith and fair dealing. Count Five states that the actions of the Daily News were taken in bad faith to the detriment of Hodge.

Defendant has now moved for summary judgment asking that the Complaint be dismissed on the ground that there is no genuine issue of material fact and that summary judgment is appropriate.

## DISCUSSION

### Standard for Summary Judgment

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that them is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.

CIV. P. 56(c).[1] *See Skopbank v. Allen-Williams Corp.*, 7 F. Supp. 2d 601, 605, 39 V.I. 220, 227 (D.V.I. 1998). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is material only if its existence or non-existence will affect the outcome of a lawsuit under applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The role of the court is not to weigh the evidence for its truth or credibility, but merely to ascertain whether a triable issue of fact remains in dispute. *Suid v. Phoenix Fire & Marine Ins. Co., Ltd.*, 26 V.I. 223, 225 (D.V.I. 1991). The nonmoving party receives "the benefit of all reasonable doubts and inferences drawn from the underlying facts." *Aristide v. United Dominion Constructors, Inc.*, 30 V.I. 224, 226 (D.V.I. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "Summary judgment, an extreme remedy, cannot be entered unless the movant has established its rights to a judgment with such clarity as to leave no room for controversy, and the other party is not entitled to recover under discernible circumstances." *Battle v. Industrious*, 26 V.I. 83, 85 (Terr. Ct. 1991). However, "[i]t may be granted if it appears from the record, after viewing all the evidence and factual inferences in the light most favorable to the non-moving party, that the moving party is entitled to judgment as a matter of law." *Id.*

### The Virgin Islands Wrongful Discharge Act

The Daily News argues that there is no genuine issue of material fact about whether or not there was a violation of the Virgin Islands Wrongful Discharge Act ("WDA"), and it therefore state that this case is appropriate for summary judgment. The Daily News argues that Hodge has not established a prima facie case under the WDA; and it argues that if he has established a prima facie case, the stated reason for his discharge was not pretextual.

---

[1] The Federal Rules of Civil Procedure are applicable to proceedings in the Superior Court to the extent that they are not inconsistent with the Rules of the Superior Court. SUPER. CT. R. 7.

Under the pertinent provisions of the WDA, "[u]nless modified by union contract, an employer may dismiss any employee whose continuous absences from his place of employment affect the interests of his employer" V.I. CODE ANN. tit. 4, § 76(a)(6) (1997). Additionally, "[t]he Commissioner may by rule or regulation adopt additional grounds for discharge of an employee not inconsistent with the provisions enumerated in subsection (a) of this section." V.I. CODE ANN. tit. 4, § 76(b) (1997). Finally. "[a]ny employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged." V.I. CODE ANN. tit 4, § 76 (c) (1997).

In *Rajbahadoorsingh v. Chase Manhattan Bank, NA*, 168 F. Supp. 2d 496 (D.V.I. 2001), the District Court of the Virgin Islands reviewed the WDA and the procedure for analyzing whether the discharge of an employee was in accordance with the law. The Court analogized a suit under the WDA to one conducted pursuant to Title VII of the Civil Rights Act, which covers federal employment discrimination. The Court found that although the specific elements for a wrongful discharge claim differ from those of a Title VII claim, the two causes of action share the practical purpose of bringing the litigants and the court expeditiously and fairly to the ultimate question. *Id.* at 504.

Because the goals of the two statutes are similar, the procedure adopted by the Court for the resolution of a WDA claim is similar to the procedure utilized for the resolution of a Title VII discrimination claim. In resolving a WDA claim, the Court must first determine whether or not the allegedly aggrieved employee has established a prima facie claim of wrongful termination from employment. *Id.* In order to do this, the employee must show that: (1) he was an employee; (2) of a covered employer; (3) he was discharged; and (4) the discharge was wrongful. *Id.* Once the employee establishes a prima facie case, a presumption of wrongful discharge arises against the employer. *Id.* (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981)).

Once the employee establishes a prima facie case, the burden of production then shifts to the employer to articulate in rebuttal a legitimate statutorily approved reason for the termination of the employee. *Rajbahadoorsingh*, 168 F. Supp. 2d at 505. The rebuttal evidence of legitimacy of the termination is limited to the statutorily approved reasons, but the employer should not be prejudiced by this, since the WDA "cover[s] all or almost all legitimate reasons for discharge." *Id.*

(quoting *St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the V.I.*, 218 F.3d 232, 244 (3d Cir.2000)). In addition, as the *Rajbahadoorsingh* court points out, the second prong, which allows the employer to rebut the claim of wrongful termination, does not require the employer to prove that it was motivated by the statutorily-approved reasons in the WDA, but only requires the employer to raise a genuine issue of fact whether the employee was wrongfully discharged. 168 F. Supp. 2d at 505; *Burdine*, 450 U.S. at 254.

After the employer shows a legitimate statutorily approved reason for the discharge, the burden of production then shifts back to the employee to show by a preponderance of the evidence that the reasons proffered by the employer are pretextual.

> To satisfy this burden, the discharged employee must produce some direct or circumstantial evidence from which a factfinder could reasonably (1) disbelieve the employer's articulated legitimate reasons or (2) believe that a non-WDA approved reason was more likely than not a motivating or determining cause of the employer's action. The plaintiff, however, must show that the defendant was wrongfully motivated under the WDA standards, not whether the defendant was "wise, shrewd, prudent, or competent."

*Rajbahadoorsingh*, 168 F. Supp. 2d at 505 (internal citations omitted).

In summary, "to succeed in a wrongful discharge action, a plaintiff must establish both a prima facie case of wrongful termination *and* demonstrate [] 'weakness, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action . . .' " *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)) (emphasis in original). *Rajbahadoorsingh* presents the framework of analysis that must be used in determining whether Plaintiff has met his burden in this case of showing that there is a genuine issue of material fact to be presented to the jury of wrongful discharge. This framework was adopted by this Court in *Fenton v. C & C Construction Co.*, 48 V.I. 263 (V.I. Super. 2007) (D'Eramo, J.). The *Fenton* court identified the intrinsic societal tensions between preventing wrongful firings and preserving our society's goal of free decision-making in economic affairs. 48 V.I., at 272. The Court found "that the shifting burdens adopted by *Rajbahadoorsingh* strike the correct balance between these two policy considerations." *Id.*

Using this analysis, the Daily News argues that Hodge has not established a genuine issue of material fact concerning his termination because the act of replacing Hodge after being absent for thirty-three (33) weeks and, ultimately, terminating him was in strict compliance with the WDA. Defendant further argues that the allegations by Plaintiff in the Second Amended Complaint — that the dismissal of Hodge was without just cause, willful, contrary to policy and pretextual and otherwise in violation of the law — are vague and non-specific. Defendant argues that Hodge has not established a prima facie case of wrongful discharge because he has not shown that the discharge was wrongful and that, even if he has established a prima facie case, he has not presented any proof that the stated reason of the Defendant is pretextual.

In contrast, Hodge argues that the Daily News wrongfully discharged him because of his disability and not because of any of the stated allowable reasons for discharge under the WDA. Hodge argues that he suffered a serious back injury while on the job on March 28, 2000, and that the injury made Hodge unable to work at all until August 3, 2000, when his doctor released him for part-time, light-duty work. Although evidence indicates that light-duty work was available, according to Hodge, the Daily News denied him an accommodation stating that no such work was available. When Hodge was released by his doctor to resume full-time work on October 16, 2000, the Daily News terminated him and advised him that it had given his position to another employee.

Hodge alleges that he is prepared to present testimony by calling employees of the Daily News who would testify that there was indeed light-duty work available in August 2000. Also, the affidavit of the Managing Editor of the Daily News, which alleges that Hodge's absence had a deleterious effect on the functioning of the Daily News, is controverted by several witnesses who would testify that the Daily News was able to function well during Hodge's absence. The argument of the Daily News that Hodge's position was filled in October 2000, and that Hodge could no longer be employed in his former job, is also controverted. Testimony of two witnesses, who would state that the managing editor of the Daily News was trying to fill Hodge's position at the 11th hour to prevent him from returning to work full-time in October, coupled with the aforementioned evidence that Hodge has presented to the Court in opposition to the motion for summary judgment, are sufficient to raise a genuine issue of material fact under the WDA and

defeat summary judgment in this case. Therefore, the Court will deny Defendant's motion for summary judgment on the WDA claim.

### The Workers' Compensation Act

The Defendant argues that Hodge cannot maintain a claim in this lawsuit under the Workers' Compensation Act because he never filed a written injury report with the Daily News, never requested that the Daily News file a report of injury with the Workers' Compensation Administration, and never filed a claim as required under the Workers' Compensation Act. In opposition, Hodge argues that there was no necessity for the filing of a claim with the Daily News because the Defendant was aware of the fact that Hodge was unable to return to work based upon a work-related disability. A review of the Workers' Compensation Act and its terms is necessary for the Court to determine the relative validity of the arguments.

The Workers' Compensation Act, V.I. CODE ANN. tit. 24, §§ 250-292 (1997 & Supp. 2009), "creates a series of benefits and obligations for employers and employees in the Virgin Islands." *Herman v. Hovensa*, 49 V.I. 24, 27 (V.I. Super. 2007). A covered employer not only has the obligation of securing the payment of compensation by paying into the Government Insurance Fund, but also has the benefit of the exclusive remedy provided in the Workers' Compensation Act. *Id.* Even though the employee loses the right to bring a common law action against the employer other than for intentional tons, the employee gains the benefit of a definite source of recovery against the employer. *Id.*

The reporting requirements enumerated within the Workers' Compensation Act are crucial to the scheme for recovery under it.

> [The Workers' Compensation Act] imposes certain reporting require-
> ments on the employee, such as the obligation to report injuries to their
> employer in writing, § 257(a). Certain reporting requirements are also
> imposed on the employer, including the obligation to file an employ-
> er's report of injury with the [Workers' Compensation Administra-
> tion] within eight (8) days after the receipt of the written notice of
> injury from the employee, § 257(b). The failure of the employer to file
> a report of injury does not prejudice the claim of the employee. *id*. The
> employee may file their own claim, § 258. The claim must be filed
> within sixty days, § 258(a), although this time period may be extended
> for good cause, § 258(c).

*Herman*, 49 V.I. at 27.

The Daily News states that Hodge never advised it of a work-related injury in writing pursuant to the Workers' Compensation Act, never requested that the Daily News file a report of injury with the Workers' Compensation Administration, and that Hodge never filed a claim. Hodge does not deny this. Hodge, however, states that he should be excused from this requirement because the Daily News had actual knowledge of Hodge's work-related injury. Hodge relies on *Etienne v. Commissioner of Labor*, 18 V.I. 616 (D.V.I. 1981), in support of the proposition that if an employer has actual knowledge of a work-related disability that the employee is excused from the formal notification requirements of the Workers' Compensation Act.

In *Etienne*, the court stated that the purpose of the notice requirement in the Workers' Compensation Act is for the benefit of the employer and not the Workers' Compensation Administrator. *Id.* at 618. The purpose of the notice provision is to allow the employer to protect itself by prompt investigation and treatment of the injury. *Id.* Thus, if the employee can demonstrate that the employer had actual or constructive notice of the injury in question, then the notice requirement cannot have an effect on compensation.

Hodge states that the Daily News had actual notice of the fact that he had a work-related injury. In support of this proposition, Hodge states that he advised the Managing Editor of the Daily News, J. Lowe Davis, on March 29, 2000, that he had suffered from back and leg pains, which were a result of his carrying heavy equipment while working at the Virgin Islands Daily News for twenty (20) years. In conjunction with making this statement to his supervisor, Hodge gave her a note from Dr. James Nelson, his physician, dated March 29, 2000, advising the Daily News that Hodge was disabled and was advised to remain away from work until May 3, 2000. There is also a phone message that confirms the fact that, on March 28, 2000, Hodge had telephoned J. Lowe Davis to advise her that his leg was hurting, that he could hardly walk and that he had gone to see his physician about it. Finally, Hodge points to a report signed by Dr. Nelson on May 18, 2000, in which Dr. Nelson states that Hodge has a disability that is work-related.

While the Daily News can certainly point to other facts from which the jury could conclude that Hodge's recitation of the facts concerning giving notice of his allegedly work-related condition is not true, the Court

believes that Hodge has tendered sufficient facts in the record to present this question as a genuine issue of material fact to survive this motion for summary judgment on this issue. Therefore, the Court will deny Defendant's motion for summary judgment with respect to the workers' compensation claim.

## Intentional Infliction of Emotional Distress

Hodge alleges that the Daily News intentionally inflicted emotional distress on him by virtue of his termination. The Court agrees with the Daily News that the motion for summary judgment on this claim should be granted and the claim dismissed.

■ A party may recover damages for the tort of intentional infliction of emotional distress in the Virgin Islands. *Thomas Hyll Funeral Home, Inc. v. Bradford*, 233 F. Supp. 2d 704, 714 (D.V.I. 2002). The RESTATEMENT (SECOND) OF TORTS § 46 provides that one "who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[2] To recover damages for this tort, Plaintiff must show that the Defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Manns v. The Leather Shop Inc.*, 960 F. Supp. 925, 930 (D.V.I. 1997). This is a very difficult standard to meet in an employment discrimination case. As the Court pointed out in *Alvarez v. Pueblo International, Inc.*, 24 V.I. 141. 147 (Terr. Ct. 1989), although there might be disagreement with the decision to fire an employee, an employer's exercise of such discretion in dismissing an employee "does not rise to the level of conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." This Court believes that the barrier that Hodge faces in establishing the elements of the tort of intentional

---

[2] V.I. CODE ANN. tit 1, § 4 (1995) provides:

The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, is generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

infliction of emotional distress under the facts of this case are equally insurmountable. Because there are no genuine issues of material fact from which a jury could sustain this claim, the Court will grant summary judgment dismissing this claim.

### Negligent Infliction of Emotional Distress

 The claim of negligent infliction of emotional distress must also be dismissed on a motion for summary judgment. The RESTATEMENT (SECOND) OF TORTS § 313 provides that:

> [i]f the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

 To recover on a claim of negligent infliction of emotional distress, the Plaintiff has to present evidence showing that he suffered actual physical injury as a result of the conduct of the Defendant. *Anderson v. Government of the Virgin Islands*, 180 F.R.D. 284. 287, 39 V.I. 235 (D.V.I. 1998) (one must show actual physical injury as a result of the defendant's actions and that such injury was reasonably foreseeable as a result of defendant's actions to prevail on a claim for negligent infliction of emotional distress); *Mingolla v. Minnesota Mining and Manufacturing Co.*, 893 F. Supp. 499 (D.V.I. 1995) (to recover for the tort of negligent infliction of emotional distress, defendant's negligent conduct must have placed plaintiff in danger for his or her safety, and plaintiff must have suffered bodily harm as a result of the emotional disturbance); *Fenton*, 48 V.I. 263 (claim for negligent infliction of emotional distress dismissed where there was no allegation that the plaintiff was placed in danger of physical harm as a result of his dismissal).

 Hodge is unable to show that he has suffered physical injury as a result of his termination or that it was reasonably foreseeable that he would be exposed to physical injury. The claim for negligent infliction of emotional distress, therefore, must be dismissed.

### Breach of the Covenant of Good Faith and Fair Dealing

Hodge alleges that the Daily News breached the covenant of good faith and fair dealing as set out in the Employee Handbook. The Daily News moves for summary judgment on this claim because it contends that there is no evidence that the Defendant engaged in fraud and deceit, and that the claim must therefore fail.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." RESTATEMENT (SECOND) CONTRACTS § 205 (1981). The courts of the Virgin Islands have held that this covenant of good faith and fair dealing applies to at-will contracts between employee and employer in the Virgin Islands. *Petersen v. Federal Loan and Savings Co. of Puerto Rico*, 21 V.I. 429, 617 F. Supp. 1039, 1042 (D.V.I. 1985). The courts of the Virgin Islands have looked to indicia of the terms of the contract in employee manuals and handbooks, but the covenant appears to be an implied condition of the at-will contract between employer and employee. Compare *Bostic v. AT&T*, Civ. No. 226/2001, 2003 U.S. Dist. LEXIS 25477 (D.V.I. Apr. 16, 2003) *with Petersen*, 617 F. Supp. 1039.

In order to establish a breach of the cover of good faith and fair dealing, the Plaintiff must show that that were acts of fraud and deceit on the part of the employer. *Bostic*, 2003 U.S. Dist. LEXIS 25477, at *22. Although the Daily News controverts that it acted in a fraudulent and deceitful manner, Hodge points to evidence that, if believed, would indicate that the Daily News denied him part-time work when he was suffering from a disability and advised him that his position had been filled when that was not true. This would be a sufficient basis to create a genuine issue of material fact for the jury to decide. For that reason, the Court will deny the motion for summary judgment on this claim.

### Punitive Damages

The Daily News moves to dismiss the count for punitive damages. The Court agrees with the Daily News that it is not proper so plead punitive damages as a separate cause of action. *Urgent v. Havana*, Civ. No. 103/2006, 2008 U.S. Dist. LEXIS 77455, *31 (D.V.I. Oct. 2, 2008). If the Court had dismissed the other counts of the Complaint as requested by the Defendant, the count for punitive damages would also have to be dismissed. *Id.* However, the proper course to take is not to dismiss the

demand for punitive damages, but to direct that Plaintiff submit an amended complaint removing the demand for punitive damages as a separate count of the Plaintiff and placing it in the *ad damnum* section of the Complaint.

A separate Order will follow this Memorandum Opinion.