**FILED**
August 06, 2024 05:25 PM
ST-2020-CV-00154
**TAMARA CHARLES
CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

\*\*\*\*\*

| | | |
|---|---|---|
| SYREETA GUMBS, | ) | |
| | ) | **CASE NO. ST-2020-CV-00154** |
| Plaintiff, | ) | |
| -vs- | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| GOVERNMENT OF THE VIRGIN ISLANDS | ) | |
| and ASSOCIATION OF FIREFIGHTERS | ) | |
| Local 2125, | ) | |
| | ) | |
| Defendants. | ) | |

Cite as: 2024 VI Super 29U

<u>**MEMORANDUM OPINION AND ORDER**</u>

¶1     Pending before this Court are:

1. Defendant Government of the Virgin Islands' Summary Judgment Motion, filed July 31, 2023;

2. Statement of Undisputed Facts in Support of Government of the Virgin Islands' Summary Judgment Motion, filed July 31, 2023;

3. Memorandum in Support of the Support of Government of the Virgin Islands' Summary Judgment Motion, filed July 31, 2023;

4. Plaintiff's Opposition to Defendant's Government of the Virgin Islands' Motion for Summary Judgment, filed October 30, 2023; and

5. Defendant Association of Firefighter's Response to Government of the Virgin Islands' Motion for Summary Judgment, filed June 7, 2024;

6. Defendant Association of Firefighter's Response to Government of the Virgin Islands' Statement of Undisputed Facts, filed June 7, 2024; and

7. Memorandum in Support of Defendant Association of Firefighter's Response to Government of the Virgin Islands' Motion for Summary Judgment, filed June 7, 2024.

¶2      Defendant Government of the Virgin Islands ("GVI") moves the Court for summary judgment against Plaintiff Syretta Gumbs' ("Gumbs") Complaint, filed on March 10, 2020. For the reasons that follow, GVI's Motion for Summary Judgment will be granted in part and denied in part. Specifically, the Motion will be granted as it pertains to Gumbs' claims for wrongful discharge and breach of duty of good faith and fair dealing. The Motion will be denied as to Gumbs' claims for sexual harassment and retaliation, violations of the Virgin Islands Civil Rights Act (VICRA).[1] Gumbs concedes that summary judgment is appropriate with respect to her wrongful discharge claim, but otherwise opposes the Motion.[2]

## I.      BACKGROUND.

¶3      Gumbs began working as a firefighter with the Virgin Islands Fire Service ("VIFS") in 2007 and alleges that she encountered sexual harassment and sexual assault at the hands of her employer. Gumbs was also a member of VIFS' associated union, the Association of Firefighters Local 2125 ("the Union").

¶4      Gumbs filed her Complaint against the Union and GVI in March 2020. Among other assertions, Gumbs alleges that GVI violated 10 V.I.C. §§ 64 and 64(a) of the Virgin Islands Civil Rights Act during her employment with VIFS.  She argues that as an employee of VIFS, she was sexually harassed by fellow firefighters and retaliated against by management for reporting the harassment.[3]  Gumbs' Complaint alleges four separate instances of sexual misconduct between 2009 and 2017 when she was "groped, shown sexual acts on video,[4] and awakened from sleep to her breast being sucked on against her will."[5]

¶5      Gumbs argues that GVI is strictly liable for its employees' "unchecked sexual harassment" and "creation of a hostile work environment" under the Virgin Islands Civil Rights Act. Gumbs further asserts that GVI contributed to a hostile work environment by failing to remove employees from employment who sexually harassed and sexually assaulted her, and that it breached its duty of good faith and fair dealing by failing to properly investigate and timely discipline the assailant who admitted to sexually harassing her in 2017.[6]

---

[1] V.I. Code Ann. tit. 10, § 64 et seq.

[2] "Plaintiff acknowledges that GVI is exempt from the Virgin Islands Wrongful Discharge Act." Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 1.

[3] Compl. ¶43.

[4] The Court notes the following discrepancies: Gumbs' states that she was shown nude photographs. Compl. ¶10,11; GVI asserts Gumbs claimed "that she had text messages from Miller to show that he had been sexual [sic] harassing her." Mem. in Support of the Gov. of the V. I.'s Summ. J. Mot. at 7; The Union asserts that Gumbs alleged her supervisor showed her a "lewd video." Mem. in Support of Def. Ass'n of Firefighters's Resp. to Gov. of the V. I.'s Mot. for Summ. J. at 4.

[5] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 7.

[6] Compl. at 6. Gumbs also alleges that the Union breached a duty to enforce provisions of the CBA on her behalf.

¶6     Gumbs further maintains that, after she lodged the formal complaints with VIFS management, she was confronted with retaliation from her supervisors. As a result of what Gumbs believed to be a hostile work environment, she felt forced to resign from her position. For its part, GVI argues that it responded to each of Gumbs' allegations and Gumbs failed to cooperate in the necessary steps for investigations of her reports.

¶7     In support of its motion for summary judgment, GVI further argues that Gumbs failed to present evidence showing "VIFS' conduct unreasonably interfered with her work performance or created an intimidating hostile work environment."[7] GVI also asserts that evidence is lacking to show Gumbs experienced retaliation for reporting harassment or that GVI violated a duty of good faith and fair dealings. GVI further argues that Gumbs abandoned her 2009 and 2013[8] allegations of sexual harassment, and that, nevertheless, those particular allegations are also time barred by statute of limitations.

¶8     Lastly, VIFS, GVI, and the Union are parties to a Collective Bargaining Agreement ("CBA"). Pursuant to its Preamble, the purpose of the CBA is "to achieve and maintain harmonious relations between the employer and union. . . " and "to provide for equitable, prompt and peaceful adjustment of differences which may arise."[9] GVI argues that Gumbs failed to follow the appropriate reporting process pursuant to the CBA, and that she did not exhaust administrative remedies as required by the CBA.[10] GVI contends that Gumbs' sexual harassment grievances during her employment with VIFS fall under the governance of the CBA and the grievance procedure provided therein.[11]

---

Compl. ¶¶ 48-52.

[7] Mem. Support of Gov. V.I.'s Summ. J. Mot. at 2.

[8] Gumbs' Complaint states that after she was transferred in 2009, she worked without incident until 2013. Compl. ¶10,11. All parties acknowledge that Gumbs submitted a complaint against her supervisor, however, GVI assigns 2011 as the year of Gumbs' complaint and argues that the behavior Gumbs complained of at the time was not of a sexual nature. In its Motion, GVI does not dispute the date that Gumbs provides. Therefore, for purposes of this Order, the Court will use the 2013-year date as provided by Gumbs. Statement of Specific Undisputed Facts in Support of Gov. V.I.' Summ. J. Mot. ¶¶16-21; Compl.¶¶9, 10.; Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 9.

[9] Def. Gov. V.I. Mot. Stay Litigation & Compel Arbitration, Ex. CBA at 1 (Preamble).

[10] "Even though Gumbs waited nearly three months after the incident allegedly occurred to notify VIFS management, GVI investigated Gumbs' assertion of sexual assault. Under the CBA, Gumbs was required to report this incident within five (5) working days of its occurrence." Mem. in Support of the Gov. of the V.I.'s Summ. J. Mot. at 10.

[11] The CBA states that "[t]he Employer recognizes the Union as the exclusive bargaining representative of all fire fighters, and fire corporals in the Virgin Islands Fire Service, Government of the Virgin Islands, St. Thomas, St. John, and St. Croix as certified by the Public Employees Relations Board of the Virgin Islands." Def. Gov. V.I. Mot. Stay Litigation & Compel Arbitration, Ex. CBA at 2 ( Article I Recognition). "The CBA further states that the Grievance Procedure contained within 'shall be the exclusive remedy for disputes between the parties to this Agreement. . . .'" Def. Gov. V.I. Mot. Stay Litigation & Compel Arbitration, Ex. CBA at 16 (Article XVII Grievance Procedure Section 7.4).

¶9    Gumbs did not respond to GVI's assertion concerning the CBA, however, the Union contests GVI's position. It argues that Gumbs' allegations of sexual misconduct are *not* covered by the CBA.[12] As a party to the CBA and a co-defendant to the instant case, the Union contends that no provision of the CBA covers Gumb's allegations of sexual harassment. The Union maintains that it has "no duty or jurisdiction over complaints of sexual harassment and sexual crimes committed" by any of Gumbs' fellow firefighters, "especially a firefighter of equal rank" pursuant to the CBA. [13] For its part, the Union submits that "the proper question before the Court on Summary Judgment is whether the alleged events constitute grievances under the CBA."[14]

## II.    SUMMARY JUDGMENT STANDARD.

¶10    Summary judgment is governed by Rule 56 of the Virgin Islands Rules of Civil Procedure, which states:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.[15]

¶11    Summary judgment is a "drastic remedy."[16] The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.[17]  Summary judgment will be granted if the "pleading, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."[18] A fact is "material" only if its existence or non-existence will affect the outcome of a lawsuit under applicable law, and an issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[19] Or, as the Virgin Islands Supreme Court stated in *Antilles School, Inc. v. Lembach*,[20] summary

---

[12] Resp. to Gov. V.I. Statement of Undisputed Facts ¶48-52; Association of Firefighters, Local 2125's Statement of Undisputed Material Facts in Support of Resp. to Gov.'s Mot. for Summ. J. ¶ 3; Mem. in Support of Def. Ass'n of Firefighter's Resp. to Gov. of the V.I.'s Mot. for Summ. J. at 2.

[13] Mem. in Support of Def. Ass'n of Firefighter's Resp. to Gov. of the V.I.'s Mot. for Summ. J. at 2.

[14] Mem. in Support of Def. Ass'n of Firefighter's Resp. to Gov. of the V.I.'s Mot. for Summ. J. at 2.

[15] V.I. Civ. P. 56(a).

[16] *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 228 (V.I. 2013) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)).

[17] *Kantz v. Univ. of the V.I.*, No. 2008-0047, 2016 U.S. Dist. LEXIS 65973, at *13 (D.V.I. May 19, 2016).

[18] Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Skopbank v. Allen-Williams Corp.*, 39 V.I. 220, 227 (D.V.I. 1998); *Accord Green v. Hess Oil Virgin Islands Corp.*, 29 V.I. 27, 30 (Super. Ct. 1994).

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[20] 64 V.I. 400 (V.I. 2016).

judgment is appropriate when after "considering all of the evidence, accepting the nonmoving party's evidence as true, and drawing all reasonable inferences in favor of the nonmoving party, the court concludes that a reasonable jury could only enter judgment in favor of the moving party."[21] Summary judgment is proper if the non-moving party fails to establish the existence of an element essential to its case and on which the party would bear the burden of proof at trial.[22] The simple assertion of a theoretical cause of action or theory of liability is not enough; a showing must be made as to each of the essential elements of the claim.[23]

¶12   The nonmoving party must show in its response to a motion for summary judgment that there are "specific facts showing a genuine issue for trial."[24] In addition, "[t]he non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial. Such evidence may be direct or circumstantial, but the mere possibility that something occurred in a particular way is not enough[.]"[25] "If the non-movant offers evidence that is 'merely colorable' or not 'significantly probative,' summary judgment may be granted."[26]

¶13   Finally, the "Court may not itself weigh the evidence and determine the truth; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party."[27] "[A]ll reasonable 'inferences, doubts, and issues of credibility should be resolved against the moving party. Consequently, summary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law. The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[28]

---

[21] *Id.* at 409.

[22] *Celotex,* at 322.

[23] *White v. Westinghouse Electric Co.,* 862 F.2d 56 (3d Cir. 1988).

[24] *Williams,* 50 V.I. at 194 (V.I. 2008) (quoting FED. R. CIV. P. 56(e)); see V.I. R. Civ. P. Rule 56; *see also Basic Servs., Inc. v. Gov't of the V.I.,* 71 V.I. 652, 658 (2019) ("A movant is entitled to summary judgment if there is no triable issue of material fact.").

[25] *Anthony,* 58 V.I. at 229 (quoting *Williams,* 50 V.I. at 194-95); *see also Anderson v. American Fed'n of Teachers,* 67 V.I. 777, 789 (V.I. 2017) (quoting *Perez v. Ritz-Carlton (Virgin Islands), Inc.,* 59 V.I. 522, 527-28 (V.I. 2012)) ("For a nonmoving party to show some genuine issue of material fact for trial, 'the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla,' in support of its position.").

[26] *Pemberton Sales & Serv. v. Banco Popular de P.R.,* 877 F. Supp. 961, 965 (D.V.I. 1994).

[27] *Williams,* 50 V.I. at 195 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).

[28] *Kantz v. Univ. of the V.I.,* No. 08-47, 2018 U.S. Dist. LEXIS 200595, at *4 (D.V.I. Nov. 26, 2018) (citations and internal quotation marks omitted).

## III.   ANALYSIS.

### A.   Applicable Legal Standards.

¶14    Gumbs contends that GVI failed to cite or analyze the applicable standard of law in its Motion. As Gumbs points out, GVI relies on federal precedent to argue Gumbs' sexual harassment and hostile environment claims which were filed pursuant to VICRA. GVI premises its Motion on the federal standards pursuant to Title VII of the Civil Rights Act of 1964. Gumbs asks the court to dismiss GVI's petition on this basis alone pursuant to *Kantz v. University of the Virgin Islands* because "GVI failed to meet its initial summary judgment burden by failing to articulate the proper standard."[29]

¶15    In the Virgin Islands, sexual harassment claims are governed by the Virgin Islands Civil Rights Act (VICRA) 10 V.I.C. § 1 *et seq.*, which is enforced by the Virgin Islands Department of Labor ("DOL"). The Supreme Court of the Virgin Islands has established that the VICRA is "significantly broader in scope" than the federal Civil Rights Act.[30] VICRA "predates the adoption of the federal Civil Rights Act . . . by nearly a decade, "and Virgin Islands Courts have questioned "why any case interpreting the federal Civil Rights Act is of any assistance in interpreting the VICRA."[31] Nevertheless, what Title VII and VICRA do have in common is an objective to avoid harm.[32] The underlying theme is "employers should nip harassment in the bud."[33]

---

[29] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 5,6. The plaintiff in *Kantz* alleged discrimination based on her race and color as a white woman employed at the University of the Virgin Islands. The V.I. Court in *Kantz* could not "analyze Plaintiff's VICRA claims by simply assuming that the same legal principles that govern her Title VII claims apply to her local claims." The Court found it could not grant summary judgment on the record before it because the Defendant in *Kantz* did not argue or cite any Virgin Islands case authority that set "forth the legal or evidentiary standard for determining what constitutes a viable claim under the VICRA, or conducted any analysis to determine what the law should be." *Kantz v. Univ. of the V.I.*, No. 2008-0047, 2016 U.S. Dist. LEXIS 65973, at *64 (D.V.I. May 19, 2016). Between the time that the Motion for Summary Judgment was filed in *Kantz* and the time it was decided, the Virgin Islands Supreme Court decided *Rennie v. Hess Oil Virgin Islands Corporation*, 62 V.I. 529 (2015). Given the impact of *Rennie* on the case, the Court denied without prejudice the Defendant's Summary Judgment Motion in *Kantz* as it pertained to the Plaintiff's VICRA claims. *Kantz* at *1-2. *See Rennie v Hess Oil Virgin Islands Corp.* at 551-552 (finding the federal Civil Rights Act of little assistance for interpreting the Virgin Islands Civil Rights Act).

[30] *Kantz v. Univ. of the V.I.*, No. 2008-0047, 2016 U.S. Dist. LEXIS 65973, at *63-64 (D.V.I. May 19, 2016).

[31] *Kantz v. Univ. of the V.I.*, No. 2008-0047, 2016 U.S. Dist. LEXIS 65973, at *63 (D.V.I. May 19, 2016) (citing *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 551-52 (2015).

[32] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998) ("Although Title VII seeks to make persons whole for injuries suffered on account of unlawful employment discrimination, its "primary objective," like that of any statute meant to influence primary conduct, is not to provide redress but to avoid harm."); *see also Rymer v. Kmart Corp.*, 68 V.I. 571, 578 n.2 (2018) ("U.S. Supreme Court decisions, while persuasive, are not binding on matters of Virgin Islands local law.").

[33] *McCurdy v. Ark. State Police*, 375 F.3d 762, 772 (8th Cir. 2004).

¶16    Federal law is persuasive authority; however the Court ultimately looks to Virgin Islands law in making its findings.[34] GVI articulates the plain language of 10 V.I.C. §64(c) asserting that Gumbs "failed to present evidence that VIFS' conduct unreasonably interfered with her work performance, or created an intimidating, hostile work environment... "[35] Accordingly, GVI invokes an appropriate standard.

## B.    A jury could find GVI liable under Title 10 V.I.C. §§ 64 et seq.

¶17    Virgin Islands law provides that "sexual harassment" means "any unwelcome sexual advances or requests for sexual favors or any other verbal or physical conduct of a sexual nature when:

(A) Submission to that conduct or those advances or requests is made either explicitly or implicitly a term or condition of an individual's employment; or
(B) Submission to or rejection of the conduct or advances or requests by an individual is used as the basis for employment decisions affecting the individual; or
(C) The conduct or advances or requests have the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."[36]

¶18    Gumbs reported harassment by her superiors in 2009 and 2013, and by her coworker in 2017. She alleges a hostile work environment existed at VIFS under Title 10 V.I.C. § 64. Gumbs asserts that GVI is strictly liable for the sexual harassment she experienced in 2017 by VIFS employee Lionel Warrell, and for its failure to remove Warrell from employment afterwards.

¶19    In opposition, GVI argues that Gumbs was not subjected to a hostile work environment and that it cannot be held liable for Warrell's conduct because when it was made aware of Gumbs' 2017 harassment claim, VIFS addressed it, and Gumbs was no longer harassed. GVI further contends that strict liability was never part of the legislative intent for 10 V.I.C. § 64 (a).

¶20    Because proof of discriminatory intent often depends on inferences rather than on direct evidence, very little evidence of such intent is necessary to defeat summary judgment.[37] "Courts are directed to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances."[38] In determining whether an employer is vicariously liable under agency

---

[34] The Court notes that both parties invoke federal precedent within their respective briefs. Pl.'s Opp'n to Def.'s Gov. V.I. Mot. for Summ. J. at 10; Mem. Support of Gov. V.I.'s Summ. J. Mot. at 3,4.

[35] Mem. Support of Gov. V.I.'s Summ. J. Mot. at 2. "The conduct or advances or request have the purpose of reflect of unreasonably interfering with and individual's work performance or creating an intimidating, hostile, or offensive working environment." 10 V.I.C. §64a (4)(C).

[36] 10 V.I.C. § 64a.

[37] *Thomas v. Regents of Univ. of Cal.,* 97 Cal. App. 5th 587, 592, 315 Cal. Rptr. 3d 623, 632 (2023).

[38] *Faragher v. City of Boca Raton,* 524 U.S. 775, 780, 118 S. Ct. 2275, 2280 (1998).

rules, one of the court's considerations is to look at whether an employer "takes swift and effective action the minute it learns of a single incident of supervisor sexual harassment."[39]

1. **The Court finds there exists a genuine dispute of material facts as to whether a hostile work environment existed within VIFS due to inconsistencies of protocol in handling Gumbs' complaints and the multiple directives provided by GVI.**

¶21     GVI provides references to *three* different directives for handling employee grievances: the CBA,[40] VIFS Rules and Regulations,[41] and its own Policy and Guidance for Prevention of Sexual Harassment.[42] Inconsistency can reveal genuine matters of dispute, and the record shows an inconsistency in how VIFS responded to and remediated each of Gumb's sexual harassment complaints. [43]

a.      **The Collective Bargaining Agreement.**

¶22     First, GVI asserts that employee complaints, such as Gumbs' are governed by the CBA,[44] which provides a specific procedure for employees to follow that requires that an employee grievance "be filed with the Chief of the Fire District within five (5) working days after its occurrence, or after the employee, or Union, knew or should have known of the matter complained of."[45]

---

[39] *McCurdy v. Ark. State Police*, 375 F.3d 762, 771 (8th Cir. 2004); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998) (finding a sexually hostile work environment was created by petitioner's supervisors where the city "failed entirely to disseminate its policy against sexual harassment among beach employees, its officials made no attempt to keep track of conduct of supervisors in question, and city's sexual harassment policy did not include any assurance that harassing supervisors could be bypassed in registering complaints. . . . As a matter of law, the city "could not be found to have exercised reasonable care to prevent the supervisors' harassing conduct.").
We hold that an employer is vicariously liable for actionable discrimination caused by a supervisor, but

[40] Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶¶27, 46-52.

[41] Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶54.

[42] Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶¶56, 63, 64.

[43] See, e.g., *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (finding plaintiff's employer was vicariously liable for a sexually hostile work environment where it "failed entirely to disseminate its policy against sexual harassment among beach employees, its officials made no attempt to keep track of conduct of supervisors in question, and [its] sexual harassment policy did not include any assurance that harassing supervisors could be bypassed in registering complaints"); *cf., Kauffman v. Allied Signal, Inc.*, Autolite Div., 970 F.2d 178 at 184-185 (6th Cir. 1992) (holding harassing supervisor acted within scope of employment, but employer was not liable because of its quick and effective remediation).

[44] "All grievances under [the CBA] shall be handled in the manner outlined in the following paragraphs: A) Grievances of Discharge, Suspension, or Demotion; B) Processing of other Grievances" and all "other grievances (excluding discharge, demotion, or suspension) are governed by 7.1 (B)" of the CBA, which provides that "all other grievances shall be filed with the Chief of the Fire District within five (5) working days after its occurrence, or after the employee, or Union, knew or should have known of the matter complained of." Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶¶ 48-50.

[45] Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶¶ 48-50; Def. Ass'n Firefighter's Resp. to Gov. V.I. Mot. for Summ. J., Ex. CBA ¶¶46-59.

¶23     As discussed above, GVI contends that Gumbs was required to follow the complaint procedure provided within the CBA. The Union, on the other hand maintains that the CBA does not cover complaints of sexual harassment. As codefendant in the instant case and a party to the CBA, the Union disputes application of the CBA to Gumbs' sexual harassment complaints against other firefighters.

### b.     The Virgin Islands Fire Service's rules and regulations.

¶24     Second, GVI refers to VIFS' Rules and Regulations which mandate that its chain of command be used "in any matters pertaining to City Department Business."[46] According to GVI, the chain of command "includes 1) immediate supervisor 2) deputy fire chief, 3) fire chief, 4) Director, VIFS, [and] 5) Lieutenant Governor."[47] GVI further states that "[f]inal departmental disciplinary authority and responsibility rests with the Director of VIFS and that "other supervisory personnel may take the following disciplinary measures: 1) oral reprimand, 2) written reprimand 3) written recommendations to the director for other penalties."[48]

### c.     GVI's policy and guidance for prevention of sexual harassment.

¶25     Finally, Virgin Islands Code mandates that the Government of the Virgin Islands adopt a policy against sexual harassment that includes, *inter alia*, a specific "description of the process for filing internal complaints about sexual harassment."[49] Training for supervisory and managerial employees must include "specific responsibilities of supervisory and managerial employees and the methods that these employees should take to ensure immediate and appropriate corrective action in addressing sexual harassment complaints."[50]

¶26     GVI's Policy and Guidance for Prevention of Sexual Harassment states that "[i]n order to rise to the level of legally actionable sexual harassment, conduct creating a hostile work environment must be severe or pervasive," however the following conduct is considered inappropriate and is prohibited in the workplace "regardless of whether it rises to the level of being 'severe or pervasive:'"

> . . . verbal abuse of a sexual nature; unwelcome, offensive sexual flirtation; unwelcome, graphic verbal comments about an individual's body; sexually

---

[46] Statement of Specific Undisputed Facts in Support of Gov. V.I. Summ. J. Mot. ¶1.

[47] Statement of Specific Undisputed Facts in Support of Gov. V. I. Summ. J. Mot. ¶¶ 1, 2.

[48] Statement of Specific Undisputed Facts in Support of Gov. V.I. Summ. J. Mot. ¶4. GVI further states that the formal charging or "preferring of charges" is the first step towards disciplinary actions "against members" and that charges "may be preferred by one member against another, or by any civilian against a member." *Id.* at ¶5.

[49] 10 V.I.C. § 64a (c) (2) (A)(v).

[50] 10 V.I.C. § 64a (c) (2) (B)(ii).

degrading words or slurs to describe an individual; unwelcome brushing, touching, patting, or pinching an individual's body; sexually explicit gestures; the display in the workplace of sexually suggestive, sexually demeaning or pornographic objects, pictures, posters, or cartoons; unwelcome inquiry or comment about sexual conduct or sexual orientation or preferences; or verbal abuse consistently targeted at only one sex, even if the content of the abuse is not sexual. Whether the conduct is severe or pervasive shall be considered in determining the level of appropriate corrective action required.[51]

¶27     According to GVI's  policy "[c]omplaints are to be made in writing or verbally to the Director of the Division of Personnel ("DOP") or to a supervisor or Department Head, *"who shall then submit the complaint to the DOP...* [52] All complaints of sexual harassment or retaliation shall be promptly and thoroughly investigated," and "[c]opies of the investigators' final report shall be submitted to the Director of the DOP."[53] Only individuals who "have received specific training to conduct investigations relating to sexual harassment complaints and related matter may be named to investigate the complaint by the Director of DOP."[54] The Director of the DOP is responsible for "maintaining records of all reports or complaints of sexual harassment or unlawful adverse employment actions and to determine the resolution of every such report or complaint ..."[55]

¶28     The policy further states that "[i]f during an investigation, it is determined that there is probable cause to believe the conduct complained about did, in fact, occur and that some action is required to correct a hostile working environment, such action will be taken, and the investigation will continue until conclusion.[56]

¶29     DOP is not mentioned in  VIFS' chain of command, and VIFS' rules state that final disciplinary authority rests with the Director of VIFS—not DOP. Standards for investigations are also not mentioned, although GVI policy distinctly requires that investigators receive specific training to conduct investigations relating to sexual harassment complaints. [57] In his deposition, VIFS Director Clifford Johnson articulated that several investigative interviews were conducted

---

[51] Gov. of U.S.V.I. Policy & Guidance for Prevention of Sexual Harassment at 4, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf.

[52] Gov. of U.S.V.I. Policy & Guidance for Prevention of Sexual Harassment at 5, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf. (emphasis added).

[53] Gov. of U.S.V.I. Policy & Guidance for Prevention of Sexual Harassment at 6, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf.

[54] Gov. of U.S.V.I. Policy & Guidance for Prevention of Sexual Harassment at 6, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf.

[55] Gov. of U.S.V.I. Policy & Guidance for Prevention of Sexual Harassment at 3, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf.

[56] Gov. of U.S.V.I. Policy & Guidance for Prevention of Sexual Harassment at 7, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf.

[57] Gov. of U.S.V.I. Policy & Guidance for Prevention of Sexual Harassment at 6, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf.

by VIFS in response to Gumbs' 2017 complaint and that he was not aware of whether DOP or VIFS required specific sexual harassment training to conduct such interviews.[58]

### d.      Gumbs' 2009, 2013 and 2017 complaints.

¶30      Gumbs alleges that she made four separate reports of sexual misconduct by coworkers while employed with VIFS. Although the parties do not agree on all details, they do agree Gumbs made three of the four alleged reports.[59]

¶31      First, in 2009, Gumbs alleges she was groped by her supervisor, that she asked to be moved to St. John as a result, and that it took a full month before action was taken on her behalf. The record shows that Gumbs reported the incident to Rick Mercer, a fellow firefighter, and to Deputy Chief Andre Smith.[60] GVI acknowledges a report was made by Gumbs involving her Captain, Arthur Edwards, however, GVI asserts that Gumbs never alluded to behavior of a sexual nature between herself and Edwards, or behavior that occurred on VIFS property.[61] According to GVI, Gumbs complained to VIFS Deputy Chief Smith that Edwards was bothering her by coming to her home and asking that she braid his hair.[62] Although the parties disagree on whether the conduct reported was of a sexual nature, the record is void of further investigation into the conduct that Gumbs complained about. Chief Smith resolved the situation by transferring Gumbs to St. John.[63] GVI contends that Chief Smith "was authorized" to address Gumbs' complaint pursuant to VIFS Rules and Regulations, however GVI does not indicate what action was taken to address the matter other than transferring Gumbs to another work location.[64] The record is void of any other action taken. In addition, it does not appear from the record that Gumbs' complaint made its way up the

---

[58] Johnson Dep. 34: 6-13, Mem. Support of Gov. V.I.'s Summ. J. Mot. VIFS Director Clifford A. Joseph directed Oral Wheatley, VIFS Chief of St. Thomas/ St. John District, to conduct interviews of all persons involved and to collect facts. *Id.* at 33:14-25, 34: 1-12.

[59] Gumbs also claims that sometime in 2013 she reported being pinned against a wall by a male firefighter, and that no action was taken by her superiors after she reported the incident. Compl. ¶15 Gumbs does not remember the name of the accused firefighter or to whom she reported the incident. Mem. Support Mot. Summ. J. at 4, Compl. ¶16. Gumbs contends that after making the report, she was later transferred to another squad and station. Compl. ¶16. VIFS does not present record of this alleged report.

[60] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 9.

[61] Statement of Specific Undisputed Facts in Support of Gov. V.I.' Summ. J. Mot. ¶¶10,11. Chief Andre Smith disagreed that Gumbs' 2009 complaint against Arthur Edwards was of a sexual nature: "[S]he said he was harassing her. She said he was coming to the house, but she never indicated to me that there was sexual relationship or anything sexual between them. . . . She said he's harassing me, and she said it was something about braiding hair and coming to my house." Smith Dep. Mem. Support of Gov. V.I.'s Summ. J. Mot.

[62] Statement of Specific Undisputed Facts in Support of Gov. V.I.' Summ. J. Mot. ¶9.

[63] Chief Smith stated that Gumbs was offered several choices, "like taking her out of group, keeping her in St. Thomas, taking her completely out of the group . . . but she requested to go to St. John. And we always had a need for personnel up St. John. It was a perfect way for me to resolve the issue that was, I thought at the time, satisfactory to her. And that's what I did, I sent her St. John." Smith Depo. 26:4-11, Mem. Support of Gov. V.I.'s Summ. J. Mot.

[64] Mem. Support of Gov. V.I.'s Summ. J. Mot. at 7.

chain of command within VIFS. Furthermore, Deputy Chief Smith did not contact the Director of DOP as GVI's protocol requires for a sexual harassment complaint. In his deposition, Chief Smith concedes that at the time of Gumbs' initial complaint, female fire fighters were relatively new to VIFS.[65]

¶32    Looking next to the 2013 complaint,[66] all parties agree that Gumbs reported that Sargeant Chazmal Miller – a fellow firefighter who later became Gumbs' supervisor –showed her sex acts on his phone.[67] Gumbs stated that the incident caused her to become "withdrawn" and "standoffish."[68] By this time Andre Smith was VIFS Chief,[69] and Gumbs contends that once she reported Miller's behavior to Chief Smith, Miller, who was her supervisor, treated her harshly in retaliation, and gave her more tasks than her fellow fire fighters.[70] Gumbs alleges that she complained of her supervisor's harsh treatment and again reported that she was shown nude pictures by him,[71] and that no action was taken on her behalf.[72] The record indicates that the only action taken by VIFS after Gumbs made her report was her transfer to another post.[73] In its defense, GVI argues that Gumbs never produced evidence of her allegations against Miller and that she chose not to press charges against Miller. Chief Smith stated that he did not believe Gumbs' statements to be truthful.[74] According to GVI, once VIFS learned of the incident, Gumbs refused to cooperate with its investigation.[75]

¶33    Although the complaint was clearly of a sexual nature, Chief Smith apparently did not forward Gumbs' complaint to the Director of DOP, as GVI protocol requires. Moreover, it appears that Gumbs' complaint never made it up VIFS' own chain of command beyond Chief Smith.[76] The record shows that the Union was also not notified of Gumbs' allegations.[77]

---

[65] Smith Dep. 25: 2-11, Mem. Support of Gov. V.I.'s Summ. J. Mot.

[66] GVI and Gumbs provide conflicting dates. GVI reports that the incident occurred in 2011. Statement of Specific Undisputed Facts in Support of Gov. V.I.' Summ. J. Mot. ¶¶16-21; Mem. Support of Gov. V.I.'s Summ. J. Mot. at 7. Gumbs states the incident occurred in 2013. Compl.¶¶9, 10.; Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 9.

[67] Mem. Support of Gov. V.I.'s Summ. J. Mot. at 7; Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 9; Compl. ¶¶9.10.

[68] Compl. ¶ 11.

[69] Gov. of the V.I.'s Mot. for Summ. J. at 9; Compl. ¶10.

[70] Compl. ¶¶ 11,12; Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶16-18.

[71] Compl. ¶13.

[72] Compl. ¶14.

[73] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 9.

[74] Smith Dep. 10:8-23, Mem. Support of Gov. V.I.'s Summ. J. Mot.

[75] Mem. Support of Gov. V.I.'s Summ. J. Mot. at 7, 8.

[76] Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶¶ 1,2,4 ("1.VIFS Rules and Regulations mandated that members utilize the chain of command in any matters pertaining to City Department Business. Exhibit 1- VIFS000171-172; 2. The chain of command included 1) immediate supervisor (corporal, sergeant, lieutenant, captain) 2) deputy fire chief, 3) fire chief, 4) Director, VIFS 5) Lieutenant Governor. Exhibit 1- VIFS000171. 4. Final departmental disciplinary authority and responsibility rests with the Director, other supervisory personnel may take the following disciplinary measures: 1) oral reprimand, 2) written reprimand 3) written recommendations to the director for other penalties. Exhibit 1- VIFS000174-175.").

[77] GVI maintains that Gumbs' complaint would have been governed by the CBA, to which the Union is also a party.

¶34    Finally, there is no dispute that Gumbs reported she was sexually assaulted on November 6, 2017, by fellow firefighter Lionel Warrell while they were both stationed in St. John. After Hurricanes Irma and Maria destroyed the Cruz Bay fire stations' lodging quarters, firefighters working 24-hour shifts were housed at the St. John Westin, and Gumbs was given her own room within a suite. [78] During the early morning on November 6, Gumbs was asleep in her suite when she was "woke up to her shirt lifted above her breast and Warrell sucking on her breast without her consent."[79] Gumbs screamed and immediately told Worrell to get out of her room; she later confronted him about the incident.[80] Warrell subsequently admitted to Gumbs' allegations.[81]

¶35    Gumbs did not report the incident to her supervisor, Captain Lyndall Anthony, until over two months after the fact, on January 28, 2018.[82] Captain Anthony reported the incident to Union President Andre Dorsey.[83] Gumbs, too, reported the incident directly to Andre Dorsey on or about Jan 28, 2018.[84] Dorsey wrote a letter to Clifford Joseph, VIFS Director, on Feb. 5, 2018, informing him of Gumbs' sexual harassment allegation.[85] In addition, "Anthony reported the incident up the VIFS chain of command, including VIFS Director Clifford Joseph."[86] Captain Anthony also "took statements from both Gumbs and Warrell," and forwarded them to the DOP.[87] As discussed above, DOP is the entity designated to handle investigations of a sexual harassment complaint, and the investigation must be conducted by a person trained in such matters.[88]

¶36    The record shows that once VIFS Director Clifford Joseph received Gumbs' complaint, he told Chief Oral Wheatley, VIFS Chief for St. Thomas and St. John, that "facts need to be collected. . . and taken down to the Division of Personnel, 'cause no longer does any agency handle sexual harassment cases."[89] Chief Wheatley was tasked with "gathering the facts" to provide to the Division of Personnel.[90] Chief Wheatley was also instructed to make sure " the accused is removed from the shift."[91]

---

[78] Compl. ¶¶ 17-19.

[79] Compl. ¶21-23.

[80] Compl. ¶¶22, 26.

[81] Mem. Support of Gov. V.I.'s Summ. J. Mot., Ex. D.O.P. Personnel Investigation Report.

[82] Compl. ¶32.

[83] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 9.

[84] Compl. ¶34.

[85] Compl. ¶38.

[86] Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶54.

[87] Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶56.

[88] Gov. of U.S.V I. Policy & Guidance for Prevention of Sexual Harassment at 6, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf.

[89] Joseph Dep. at 33, Mem. Support of Gov. V.I.'s Summ. J. Mot.

[90] Statement of Specific Undisputed Facts in Support of Gov. V. I.'s Summ. J. Mot. ¶55.

[91] *Id.*

¶37    Sexual harassment complaints are to be taken seriously, and employees must be able to trust that their superiors will respectfully handle such sensitive complaints according to established protocol, diligently holding all employees to account and remediating as necessary.

¶38    GVI carries the burden to demonstrate an absence of any issue of material fact, and the court finds it fails to do so. The record presents a medley of protocols employed by VIFS in the handling of Gumb's complaints and GVI provides different authorities for guidance. There is little on the record firmly resembling GVI's Policy for how an investigation should be conducted under such circumstances.

¶39    Viewing the evidence in the light most favorable to Gumbs and drawing all reasonable inferences in favor of Gumbs as the non-moving party, a jury could reasonably find that a hostile work environment susceptible to sexual harassment existed within VIFS. While the Court expresses no opinion on whether the evidence is strong enough to actually show that a hostile environment existed at VIFS, the Court holds that the evidence is sufficient to create a genuine issue of material fact precluding summary judgment.[92]

### 2.  Gumbs' 2009 and 2013 claims of misconduct are viable ones.

¶40    GVI argues that Gumbs abandoned her allegation of misconduct against Edwards in 2009 because she "did not want to file a charge, did not want to be moved to a different team," did not want VIFS to address her assailant, and that "her only request was to be transferred to a new location in St. John."[93]

¶41    GVI further argues that Gumbs also abandoned her 2013 claim of misconduct because she "declined to continue with charges against Miller and refused to cooperate with her employer's investigation of the matter."[94] Gumbs did not present physical evidence of her allegations when it was requested of her, and she does not deny that she resisted participation with VIFS' investigation. Gumbs maintains that she lost trust in how her supervisors handled her complaints and that male employees within VIFS demonstrated to her a pattern of covering up or ignoring inappropriate behavior.[95]

---

[92] See, e.g., *McCurdy v. Ark. State Police*, 375 F.3d 762, 767-68 (8th Cir. 20040) ("To establish a hostile work environment claim created by a supervisor, McCurdy must prove "(1) that she is a member of a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment.").

[93] Mem. Support of Gov. V.I.'s Summ. J. Mot. at 7.

[94] Mem. Support of Gov. V.I.'s Summ. J. Mot. at 8.

[95] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 10.

¶42    It is reasonable to expect that when faced with a sexual harassment complaint, an employer is not relieved of its duty to ensure the work environment is free from sexual harassment once a complaint is made, regardless of whether the alleged victim cooperates or not. GVI Policy guidelines state that both the "complainant and the alleged harasser shall be advised of the findings reached on the complaint."[96] It is unclear whether this ever occurred. According to Gumbs, she did not receive the findings reached. Viewing the evidence in the light most favorable to Gumbs, and drawing all reasonable inferences in favor of Gumbs, a trier of fact could reasonably find that VIFS failed to take sufficient remedial action, and that it was VIFS that abandoned these claims – not Gumbs.[97] Accordingly, the Court finds summary judgment inappropriate here.

### a.    Gumbs' 2009 and 2011 allegations are not time barred under the Continuing Violations Doctrine.

¶43    GVI seeks summary judgment, contending, *inter alia*, that Gumb's 2009 and 2013 claims are time-barred. Gumbs counters that although the six-year timeframe for filing a claim under the statute of limitation has expired, an exception is warranted under the "continuing violations" doctrine.[98] According to Gumbs, the "multiple instances of unwelcome sexual advances, requests, and conduct by [VIFS] male employees" constitutes a pattern that demonstrates a hostile and offensive work environment within VIFS.[99] As such, Gumbs argues that the 2009 and 2013 "incidents are part of [VIFS'] continuing violation of VICRA," which in turn makes VIFS "liable for all acts," regardless of the Statute of Limitations.[100] In opposition, GVI asserts that each of Gumbs' allegations were "independent and discrete acts" that do not represent a pattern, do not qualify under the "continuing violation" exception, and consequently do not toll the deadline timeframe of the Statute of Limitations. The question before the Court is whether Gumbs' hostile work environment claim is timely under the continuing violations doctrine where the alleged mishandling of the 2017 sexual harassment incident occurred and was part of a course of conduct that comprised the hostile work environment.

---

[96] Gov. of U.S.V.I. Policy & Guidance for Prevention of Sexual Harassment at 6, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf.

[97] *See Stein v. AG United States*, No. 22-2862, 2023 U.S. App. LEXIS 14753, at *1 (3d Cir. June 14, 2023) (finding summary judgment in defendant's favor on plaintiff's hostile-work-environment claim because plaintiff's employer took prompt remedial action in response to plaintiff's report of the sexual harassment incident "by reassigning the coworker who created the hostile environment, changing his hours, issuing him a cease-and-desist order, and implementing additional controls to prevent him and plaintiff from being alone together at work").

[98] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. n.5 at 8.

[99] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 8.

[100] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. n.5 at 8.

### i. Statute of Limitations.

¶44     Title 5 V.I.C. § 31(3)(B) establishes a six-year limitation period for filing claims. The statute provides that a civil action "upon a liability created by statute, other than a penalty or forfeiture" must be commenced within six years "after the cause of action shall have accrued." The Virgin Islands Legislature intended to create a private right of action when it enacted 10 V.I.C. §§ 64(14) and 64a, dealing with sexual harassment. Accordingly,  the six-year statute of limitations of 5 V.I.C. § 31(3)(B) applies to a sexual harassment claim, since it is an action upon a liability created by statute.[101] "The time for any statute of limitation begins to run when the cause of action accrues. Accrual takes place upon the occurrence of the essential facts that give rise to that cause of action."[102]

¶45     Gumbs' failed to file claims within six years of either the 2009 or 2013 causes of action. Accordingly, the statute of limitations prohibits her claims, barring any exceptions.

### ii. Continuing Violation Doctrine

¶46     The continuing violations doctrine is an equitable exception to the timely filing requirement. "Normally, the time frame for any statute of limitations begins when the cause of action accrues. Accrual takes place on the occurrence of the essential facts that give rise to that cause of action. However, under the 'continuing violations' doctrine, when a claim involves continuing or repeated conduct, the limitations period does not begin to run until the date of the last injury or when the wrongful conduct  ceased."[103] "Before a court will consider whether the equitable doctrine is available, the plaintiff must make a threshold showing that the claim involved continual unlawful acts, not continual ill effects from an original violation."[104]

¶47     "The continuing violation doctrine allows a ... plaintiff to rely on a discrete act to render a hostile environment claim timely only if the plaintiff establishes that the discrete act was part of the ongoing, discriminatory practice that created a hostile work environment. An unrelated discrete

---

[101] See *Canonier v. Mahogany Run Condo. Ass'n*, 54 V.I. 210, 216. V.I. LEXIS 10 (V.I. Super. Ct. 2011) ("Where a liability would not exist but for a statute, a six-year statute of limitations applies, and suing for damages for sexual harassment is an action for a liability created by statute. Thus, the six-year statute of limitations applies.").
[102] *Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. 788, 789 (2015).
[103] *Anthony v. FirstBank V.I.*, 58 V.I. 224, 230 (2013); *see also Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. 788, 796 (2015) ("When courts apply the continuing violation doctrine, the claim will not be barred provided that at least one wrongful act occurred during the statute of limitations period and that it was committed in furtherance of a continuing wrongful act or policy or is directly related to a similar wrongful act committed outside the statute of limitations.").
[104] *Anthony v. FirstBank V.I.*, 58 V.I. 224, 225 (2013).

act, different in kind from the conduct giving rise to the hostile environment, does not trigger the continuing violation doctrine." [105]

¶48    "What may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other related incidents."[106] Therefore, a factfinder "should not necessarily examine each alleged incident of harassment in a vacuum." [107] The Court refrains from considering each of Gumbs' complaints of harassment in isolation and instead considers the evaluation better served as one of the sum total of potential abuse over time.

¶49    Gumbs argues that her various complaints represent a pervasive environment at VIFS. In contrast, GVI contends that Gumbs' complaints fall into the category of "discrete act claims" as opposed to "hostile work environment claims."[108]

¶50    Drawing all reasonable inferences in favor of Gumbs as the nonmoving party, a trier of fact could find that the incidents reported were not discrete and unrelated but were part of an ongoing discriminatory pattern or practice of sexual based harassment. Although several years lapsed between the alleged conduct, Andre Smith was the same superior to whom Gumbs reported her harassment claims to in both 2009 and 2013.[109] Furthermore, Chief Smith acknowledged that at the time of Gumbs' initial complaint, female fire fighters were relatively new to VIFS.[110] In addition, the agency had not dealt with sexual harassment complaints before Gumbs and the record demonstrates a lack of consistency in the protocol followed in response to each of her complaints.

¶51    November 6, 2017, is the date of the last alleged injury. Because Gumbs' most recent claimed injury occurred within the limitations period, the continuing violation doctrine renders Gumbs' 2009 and 2013 claims timely. The Court concludes that a reasonable jury could enter judgment in favor of Gumbs and consider the 2009, 2013, and 2017 incidents of alleged sexual harassment and the manner in which GVI handled those complaints as ongoing, discriminatory practice that created a hostile work environment. Accordingly, summary judgment is denied.

---

[105] *King v. Aramark Servs.*, 96 F.4th 546, 551 (2d Cir. 2024).

[106] *Andrews v. Philadelphia,* 895 F.2d 1469, 1484 (3d Cir. 1990).

[107] *Andrews v. Philadelphia,* 895 F.2d 1469, 1484 (3d Cir. 1990).

[108] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 11.

[109] Andre Smith was Deputy Chief in 2009 and Chief in 2013. See *Goree v. City of Verona, No. 1:17-CV-93-SA-DAS, 2021 U.S. Dist. LEXIS 185429, at *15 (N.D. Miss. Sep. 28, 2021)* (finding that a significant lapse in time between alleged conduct plus intervening personnel changes – the Chief of Police title changed hands multiple times – defeated any attempt to argue that multiple incidents of harassment should be treated as a single violation under the continuing violation doctrine).

[110] Smith Dep. 25: 2-11, Mem. Support of Gov. V.I.'s Summ. J. Mot.

### 3.    Retaliation

**¶52**    In Count I of her Complaint, Gumbs argues that she was retaliated against after she reported being sexually harassed "in violation of 10 V.I.C. §64 and the Virgin Islands Civil Rights Act."[111] Under Count IV Gumbs asserts that she had to end her employment with GVI due to "harassment, discrimination and retaliation."[112] GVI argues that Gumbs fails to present a prima facie showing of retaliation.

**¶53**    Gumbs cites three instances of alleged retaliation. First, after reporting that she felt harassed by Arthur Edwards in 2009, she was transferred to St. John as retaliation.[113] Second, she asserts that after reporting that she was sexually harassed by her supervisor, Sargeant Chazmal Miller, he "treated her harshly in retaliation and gave Gumbs more tasks than her fellow fire fighters."[114] Finally, Gumbs alleges that she was then transferred from her post "[a]s retaliation for reporting the sexual harassment."[115] In its defense, GVI counters that Gumbs herself requested both transfers. GVI also argues that  Gumbs failed to present physical evidence she claimed to have had in her possession, and that she declined VIFS' efforts to investigate and pursue the matters.

**¶54**    Virgin Islands Code prohibits retaliation against employees for reporting a violation or suspected violation of Virgin Islands law.[116] With regard to summary judgment, although the facts are to be interpreted in the light most favorable to the nonmoving party, the nonmoving party may not rest upon mere allegations and must present actual evidence showing genuine issue for trial.[117]

**¶55**    According to the record, Gumbs declined Police Chief Andre Smith's offers to forward her 2009 complaint up the chain of command or to have a Union official involved in the matter.[118] Smith further claims that it was Gumbs who requested a transfer to St. John.[119] Gumbs asserts that she was transferred to a different squad and station after she reported the alleged 2009 assault,

---

[111] Compl. ¶43.

[112] Compl. ¶55.

[113] Compl. ¶43.

[114] Compl. ¶¶ 11, 12, 13, 16.

[115] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 9.

[116] *See Schrader-Cooke v. Gov't of the V.I.,* 72 V.I. 218, 248 (Super. Ct. 2019) ("24 V.I.C. § 451a(a) provides that '[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee ... reports or is about to report, verbally or in writing, a violation or a suspected violation of this chapter, regulation or rule promulgated pursuant to law of this territory or the United States to a public body. ...'); *see also Blomker v. Jewell,* 831 F.3d 1051, 1059 (8th Cir. 2016) ("[R]etaliation must be the 'but for' cause of the adverse employment action." ).

[117] *Schrader-Cooke v. Gov't of the V.I.,* 72 V.I. 218, 219 (Super. Ct. 2019).

[118] Smith Dep. 26:4-11, Mem. Support of Gov. V.I.'s Summ. J. Mot.

[119] Smith Dep. 26:4-11, Mem. Support of Gov. V.I.'s Summ. J. Mot.

however, Gumbs does not controvert Smith's claim that she was transferred at her own request.[120] In addition, VIFS contends that it had a need for employees to voluntarily transfer to St. John.[121] Smith stated that he considered the move to be "a perfect way" to resolve the situation.[122]

¶56      In regards to Gumbs' 2013 allegations, she provides no evidence to support that "[t]he offending supervisor treated her harshly in retaliation and gave Gumbs more tasks than her fellow fire fighters."[123] Furthermore, Gumbs' claim that she was transferred from her post as retaliation for reporting the alleged misconduct in 2013 is countered by GVI's assertion that the decision to reassign Gumbs had been made at her own request and for valid reasons other than retaliation. Chief Smith stated that Gumbs requested to join the Prevention Unit and that VIFS had a valid personnel need at the Prevention Unit. [124]

¶57      At this juncture, Gumbs does not demonstrate that she suffered adverse employment action because of her complaints against Miller, Edwards, or Warrell. She does not dispute that she requested and was granted the transfers that occurred after she reported the alleged incidents of sexual harassment in 2009 and 2013. However, both transfers were executed by the same person, Andre Smith, with whom Gumbs reported both the 2009 and 2013 complaints. Because disputed questions remain as to whether a hostile environment existed within the agency, and the transfers were approved by the same supervisor that both 2009 and 2013 allegations were reported under, the Court is persuaded that summary judgment is not appropriate here. Although slight, a genuine dispute exists as to whether the purported reasons for Gumbs' transfers were pretexts for retaliation towards her.

## 4.   Duty of Good Faith and Fair Dealing

¶58      Gumbs argues that GVI breached a duty of good faith and fair dealing because it failed to properly investigate Gumbs' claims of sexual harassment and assault, failed to "properly and timely discipline Warrell once an investigation was conducted," and "forced [Gumbs] to continue working with her sexual abuser." [125] Gumbs states that she "had a reasonable expectation of employment free from sexual harassment" and VIFS had a duty to "adhere to Virgin Islands law (VICRA)" to ensure that its employees were not subject to sexual harassment.[126] Gumbs also argues that "VIFS had a duty to perform an investigation pursuant to its own rules and regulations,

---

[120] Compl. ¶7.

[121] Smith Dep. 25:2-11, 26:4-11 Mem. Support of Gov. V.I.'s Summ. J. Mot.

[122] Smith Dep. 25:2-11 Mem. Support of Gov. V.I.'s Summ. J. Mot.

[123] Compl. ¶12.

[124] Smith Dep. 26:12-21, Mem. Support of Gov. V.I.'s Summ. J. Mot.; Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 9.

[125] Compl. ¶46.

[126] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 15.

which they did not do."[127] She asserts that VIFS failed to conduct any of its "required investigatory steps" and DOP's subsequent investigation took more than eight months, while her assailant was permitted to keep working.[128] Gumbs further contends that Warrell, who admitted to sexual harassment, should have been terminated instead of only suspended without pay.

¶59     For its part, GVI argues that a breach of duty of good faith and fair dealing arises from contract law, and Gumbs fails to provide the source of contract between herself and GVI.[129] GVI argues that it investigated Gumbs' sexual assault complaint and notes that Gumbs refused to participate in a hearing on the matter.[130] GVI states that Gumbs' supervisors gave priority to the situation once she did make her complaint  and that Gumbs was no longer harassed after she reported the 2017 incident.[131]

¶60     "The implied duty of good faith and fair dealing arises by implication through the existence of a contract itself."[132] "Indeed, there can be no breach of good faith and fair  dealing to perform a particular promise when the promise was never made."[133] "A successful claim by an employee for breach of the duty of good faith and fair dealing requires proof of acts amounting to fraud or deceit on the part of the employer."[134]

¶61     Gumbs appears to rely on VIFS' rules and regulations, as well as the VICRA statute for the contractual element of her breach of duty claim. Gumbs does not point specifically to provisions allegedly breached within VICRA. Gumbs also does not provide case law to support that an individual may use a breach of contract action as a vehicle to seek redress for violation of a Virgin Islands statute governing sexual harassment. Nevertheless, even if the duty of good faith

---

[127] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 15.

[128] Pl.'s Opp'n to Def's Gov. of the V.I.'s Mot. for Summ. J. at 12. Gumbs reported the November 2017 incident with Warrell in January 2018, and VIFS' investigation began Feb 5, 2018. A letter of suspension was issued to Warrell on October 25, 2018, and he was suspended without pay from Oct 29, 2018, to March 31, 2019.

[129] GVI argues "assuming arguendo. . . any claim that VIFS failed to properly investigate [Gumbs'] claims would be governed under the CBA and Gumbs failed to exhaust her administrative remedies in this regard." Mem. Support of Gov. V.I.'s Summ. J. Mot. at 10. The grievance procedure within the CBA requires complaints to be filed within five working days of its occurrence. *Id.* The Union was not notified of either the 2009 or 2013 complaints and Gumbs reported the 2017 incident to the Union and VIFS approximately two months after its occurrence.

[130] Mem. Support of Gov. V.I.'s Summ. J. Mot. at 10, 11.

[131] Mem. Support of Gov. V.I.'s Summ. J. Mot. at 3.

[132] *Chapman v. Cornwall*, 58 V.I. 431, 441-42 (2013).

[133] *Martinez v. Safeway Stores, Inc.*, No. Cv 08-2169-PHX-JAT, 2009 U.S. Dist. LEXIS 102045, at *11 (D. Ariz. Nov. 2, 2009) In *Martinez*, Plaintiff worked in the deli department of a Safeway grocery store, and the Court determined that statements contained in Safeway's  policies were not terms of an employment contract between Plaintiff and Safeway. As such, Safeway could not be held liable for a breach of good faith and fair dealing of these policies. *See also Chapman v. Cornwall*, 58 V.I. 431, 434 (2013) ("To establish a breach of contract claim, a plaintiff must prove that a contract existed, that there was a duty created by that contract, that such duty was breached. and that he suffered damages as a result.").

[134] *Chapman v. Cornwall*, 58 V.I. 431, 434 (2013).

and fair dealing is applicable to Gumb's employment relationship via VIFS' regulations and a Virgin Islands statute, the Court finds that summary judgment on the theory that these covenants were breached is appropriate. It is true that the "duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations," however, "[a] successful claim requires proof of acts amounting to fraud or deceit on the part of the employer."[135]

¶62    The Court finds that GVI fails to clearly demonstrate that it handled Gumbs' complaint appropriately and according to GVI's own standards.[136] However, the Court does not find that GVI acted in a manner inconsistent with the purpose of VICRA or its own rules or the *reasonable* expectations of the parties with fraudulent intent or deceit. Gumbs herself does not deny that she refused to cooperate with GVI's investigation. More to the point, while GVI may not have handled Gumbs' complaint in the manner preferred and expected, these circumstances do not rise to the level of breach. Gumbs does not present evidence that allows a finder of fact to determine the actions of GVI or VIFS amounted to fraud or deceit. Consequently, Gumbs fails to establish a genuine dispute of any breach under this theory.

---

[135] *Chapman v. Cornwall*, 58 V.I. 431, 434 (2013); *see also Paul v. Hovensa*, No. 1:07-cv-00051-AET-GWC, 2013 U.S. Dist. LEXIS 80855, at *8 (D.V.I. June 7, 2013) (finding Plaintiff's allegations insufficient to raise a genuine issue of material fact as to a breach of the implied covenant of good faith and fair dealing where delays in accommodation and termination of employment "did not constitute the type of fraud and deceit required to support such a claim").

[136] Although GVI contends that VIFS properly and timely disciplined Warrell despite Gumbs' failure to cooperate with the investigation, VIFS took statements from Gumbs and Warrell and does not address whether its own rules concerning the investigation of sexual harassment complaints were diligently followed. According to GVI's policy on sexual harassment, an investigation into a sexual harassment complaint should take no more than 30 to 60 days. Gov. of U.S.V.I. Policy & Guidance for Prevention of Sexual Harassment at 7, Div. of Personnel, http://www.dopusvi.org/wp-content/uploads/2020/06/Sexual-Harassment-Policy.pdf.    The policy also lays out specific standards of investigation to be followed. Complaints of sexual harassment or of retaliation for making such complaints are to be made "to the Director of the DOP or to a supervisor or Department Head, who shall then submit the complaint to the Director of the DOP." *Id.* at 5; "Individuals that have received specific training to conduct investigations relating to sexual harassment complaints and related matter investigation will accomplish a departmental investigation. If the department does not have personnel specifically trained for this type of inquiry, then the Division of Personnel will conduct the investigation and initiate the action to resolve the complaint and address all related issues." *Id.* at 6; "Only individuals that have received specific training to conduct investigations relating to sexual harassment complaints and related matter may be named to investigate the complaint by the Director of DOP." *Id.* at 6.

### a.      The Collective Bargaining Agreement.

¶63      In its response to GVI's Motion, the Union appeals to the Court for an Order declaring that "the incidents alleged by [Gumbs] in her Complaint do not constitute grievances under the CBA, and that the Union had no duty concerning any events of which Gumbs failed to notify the Union."[137] The Union maintains that it has "no duty or jurisdiction over complaints of sexual harassment and sexual crimes committed" by any of Gumbs' fellow firefighters, "especially a firefighter of equal rank."[138] According to the Union, the "proper question before the Court on Summary Judgment . . . is whether the alleged events constitute grievances under the CBA."[139]

¶64      First, the record is clear—although the Union was not notified concerning Gumbs' 2009 or 2013 sexual harassment complaints, the Union did receive notice of her 2017 complaint. Second, the Court understands that the Union would like to see itself removed from the matter, however, several other "proper" questions remain blatantly unanswered. If the CBA is "the playbook, the Bible" governing "the union's representation of a member during a grievance," what prevents the Union from handling a sexual harassment grievance? [140] The Union's president stated that sexual harassment is not covered by the CBA because sexual harassment is a criminal matter, yet he could not show where that is stated in the CBA or Union bylaws.[141] According to the record, the Union had never received a sexual harassment complaint before Gumbs.[142] Gumbs met with multiple Union representatives – including the Union president and vice president – concerning the 2017 sexual harassment incident and she was never informed that the Union could not process a grievance concerning a criminal action.[143] In fact, the record shows that a Union representative forwarded Gumbs a grievance form to complete.[144]

¶65      Lastly, GVI – a party to the CBA – is clearly under the impression that sexual harassment grievances *are* under the purview of the CBA. Furthermore, it is GVI who  mandates that all government employees receive sexual harassment training.[145] This includes the Union.

¶66      The Court questions why a dues-paying Union member employed with VIFS could be

---

[137] Mem. in Support of Def. Ass'n of Firefighter's Resp. to Gov. of the V.I.'s Mot. for Summ. J. at 3.

[138] *Id.* at 2.

[139] *Id.*

[140] Dorsey Dep. 20:19-222, Def. Ass'n Firefighter's Resp. to Gov. V.I. Mot. for Summ. J. (June 10, 2024).

[141] Dorsey Dep. 17:7-8, 20:4-10; 43:25-44:3, Def. Ass'n Firefighter's Resp. to Gov. V.I. Mot. for Summ. J. (June 10, 2024).
GVI requires the Union to receive sexual harassment training.

[142] Dorsey Dep. at 20, 21, Def. Ass'n Firefighter's Resp. to Gov. V.I. Mot. for Summ. J. (June 10, 2024).

[143] Gumbs Dep. 141, Def. Ass'n Firefighter's Resp. to Gov. V.I. Mot. for Summ. J. (June 10, 2024).

[144] Dorsey Dep. 230:23-25, Def. Ass'n Firefighter's Resp. to Gov. V.I. Mot. for Summ. J. (June 10, 2024).

[145] Dorsey Dep. 34:22-35, 21:5-22:3, Def. Ass'n Firefighter's Resp. to Gov. V.I. Mot. for Summ. J. (June 10, 2024).

*Gumbs v. Government of the Virgin Islands, et al.*
**Case No. ST-2020-CV-00154**
**Memorandum Opinion**
**Page 23 of 23**

2024 VI Super 29U

caught between the disagreement as to whether the CBA applies to sexual harassment grievances. Given the above, the Court will deny the Union's request for declaration at this juncture which should have been the subject of a timely motion and not included in its response to a motion.

## IV. CONCLUSION.

¶67    The nonmoving party cannot be required "to definitively prove its case at summary judgment, or to even provide the most convincing evidence supporting its case. Its only burden is to submit sufficient evidence to create a genuine issue of material fact for a jury to resolve."[146] Upon review of the parties' pleadings, exhibits, and all other reasonable inferences from the evidence in the light most favorable to Gumbs, the Court finds that there exists a genuine dispute as to certain material facts concerning whether Gumbs worked in a hostile environment at VIFS and whether Gumbs experienced retaliation for reporting sexual harassment in the workplace.

¶68    Based upon the foregoing, the Defendant Government of the Virgin Islands' Summary Judgment Motion, filed on August 1, 2023, will be granted with respect to Plaintiff Syreeta Gumbs' claims for wrongful discharge and breach of duty of good faith and fair dealings. The Motion will be denied with respect to Plaintiff Syreeta Gumbs' claims for sexual harassment, retaliation and violations of the Virgin Islands Civil Rights Act.

An Order consistent with this Memorandum Opinion follows.

DATED: August **6** , 2024

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY:
**LATOYA CAMACHO**
Court Clerk Supervisor  8 / 6 / 24

---

[146] *United Corp. v. Hamed*, 64 V.I. 297, 311 (2016).



**FILED**
August 06, 2024 05:25 PM
ST-2020-CV-00154
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
\*\*\*\*\*

| | | |
|---|---|---|
| **SYREETA GUMBS,** | ) | |
| | ) | **CASE NO. ST-2020-CV-00154** |
| **Plaintiff,** | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **GOVERNMENT OF THE VIRGIN ISLANDS** | ) | |
| **and ASSOCIATION OF FIREFIGHTERS** | ) | |
| **Local 2125,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

Cite as: 2024 VI Super 29U

### ORDER

**AND NOW,** consistent with this Court's Memorandum Opinion of even date, it is hereby

**ORDERED** that Defendant Government of the Virgin Islands' Summary Judgment Motion, filed July 31, 2023, is **GRANTED** with respect to Plaintiff Syreeta Gumbs' claims for wrongful discharge and breach of duty of good faith and fair dealing, and Counts II and IV of Plaintiff's Complaint are **DISMISSED**; and it is further

**ORDERED** that the Defendant Government of the Virgin Islands' Summary Judgment Motion, filed July 31, 2023, is **DENIED** with respect to Count I of Plaintiff's Complaint; and it is further

**ORDERED** that a copy of this Order and the accompanying Memorandum Opinion shall be directed to counsel of record.

DATED: August **6**, 2024

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

ATTEST:

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO** 8/6/24
Court Clerk Supervisor